```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #:_____
------------------------------------------------------------- X     DATE FILED: 2/24/2017
                                              :
PAUL CAUFIELD, et al.,                        :
                              Plaintiffs,     :
                                              :     16 Civ. 4170 (LGS)
              -against-                       :
                                              :     **OPINION AND ORDER**
COLGATE-PALMOLIVE CO., et al.,                :
                                              :
                              Defendants.     :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

This is a continuation of the litigation in *In re Colgate-Palmolive Co. ERISA Litigation*, Master File No. 07 Civ. 9515 ("*Colgate I*"). Plaintiffs Paul Caufield and Rebecca Staley allege that Defendants Colgate-Palmolive Co. ("Colgate"), Colgate-Palmolive Co. Employees' Retirement Income Plan (the "Plan"), Laura Flavin, Daniel Marsili and the Employee Relations Committee of Colgate-Palmolive Co. (the "Committee") denied certain Residual Annuity benefits to which Plaintiffs are entitled under the Plan. They assert claims against Defendants for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and for contempt of the Court's Final Order and Judgment in *Colgate I*. Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims were released in the settlement agreement from *Colgate I*, are time barred and fail to state a claim. For the following reasons, the motion is denied.

## I.   BACKGROUND

For purposes of Defendants' motion, the following facts are drawn from the Complaint and documents integral to the Complaint. The facts are construed in the light most favorable to

Plaintiffs as the non-moving party.  *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

Plaintiffs are former employees of Colgate.  Plaintiff Paul Caufield was employed by Colgate from 1977 to 1999.  Plaintiff Rebecca Staley was employed by Colgate from 1979 to 1994.  Both Plaintiffs were and are participants in the Plan, which is sponsored by Colgate and administered by the Committee.  The Committee is comprised of selected Colgate officials, including Defendants Laura Flavin and Daniel Marsili.

The Plan is a defined benefit pension plan.  As such, the Plan guarantees that each participant will receive a certain level of benefits, known as accrued benefits, expressed as the amount the participant would receive annually as an annuity upon reaching normal retirement age, here, age 65.  A participant's accrued benefit is determined under the terms of the Plan.  Prior to July 1, 1989, the Plan used a final average pay formula, meaning in simplest terms that the level of benefits was based on the participant's length of service and average salary during her final years of service.  Effective July 1, 1989, the Plan became a cash balance plan, which essentially uses a career average pay formula.  Specifically, the new plan formula defines a participant's benefits in terms of a Personal Retirement Account ("PRA") balance, which reflects accumulated monthly pay-based credits and interest.  Upon retirement, the PRA balance is converted into an annuity or, if preferred, paid as a lump sum.

Because the benefits provided under the new formula would in some circumstances be less valuable than the benefits provided under the old formula, Colgate enacted protective Plan provisions and offered enhanced benefits for participants with pre-July 1989 benefits.  These provisions and benefits are set forth in Plan Appendices B, C and D.  First, all such participants were to receive the larger of the annuity calculated under (1) the Plan's pre-July 1989 final

2

average pay formula, or (2) the Plan's new PRA formula. Second, these participants had the option to continue earning benefits under the pre-July 1989 final average pay formula by making employee contributions to the Plan. Participants who selected this option were to receive the larger of the annuity calculated under (1) the Plan's pre-July 1989 final average pay formula as continued in effect post-July 1, 1989, or (2) the Plan's new PRA formula plus an annuity based on the employee's contributions.

Caufield and Staley had pre-July 1989 benefits and opted to make employee contributions. When they retired from Colgate in 1999 and 1994, respectively, they each elected to receive their benefits under the Plan in the form of a lump sum. Colgate paid Caufield $104,386.00 and Staley $22,425.64.

In 2005, Colgate acknowledged that the lump sums the Plan had been paying to participants with pre-July 1989 benefits were less than the lump sums to which they were statutorily entitled. The deficiency in the lump sum payments meant that Defendants had deprived Plan participants of some of their non-forfeitable pension benefits. To correct this problem, Colgate enacted the Residual Annuity Amendment ("RAA") in 2005. The RAA amended the Plan and granted an additional annuity benefit to any participant with pre-July 1989 benefits who elected a lump sum and whose benefit under Appendices B, C or D was greater than her benefit under the PRA formula. The RAA was effective retroactively to July 1, 1989. Defendants did not implement the RAA until 2014 and have never provided Plan participants an updated summary plan description ("SPD") or summary of material modifications ("SMM") disclosing the RAA.

In 2007, three lawsuits were filed against the Plan alleging that it had miscalculated the pension benefits of several thousand participants since July 1, 1989. The cases were

3

consolidated into *Colgate I*.  In May 2010, after three years of litigation, the parties reached an agreement in principle to settle the case.  Up to that point, Defendants had not produced a copy of the RAA in response to discovery requests, and counsel for the plaintiffs in *Colgate I* were not aware of the RAA.  Once plaintiffs' counsel received a copy of the RAA in July 2011, they insisted that all RAA claims be carved out of the settlement agreement.  Colgate and the Plan eventually agreed, and on October 9, 2013, the parties executed a settlement agreement.  The settlement agreement excluded any claims "that are based upon, or arise under" the RAA and prohibited the Plan or Colgate from asserting in any future administrative or legal proceeding that claims under the RAA were released under the settlement agreement.  The Court approved the settlement agreement and noted that "certain claims known as the Residual Annuity Claims were excluded from the scope of the settlement." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 346–47 (S.D.N.Y. 2014).

In August 2014, Defendants granted additional benefits under the RAA to a few hundred Plan participants.  Caufield received a Residual Annuity of $57.94 per month plus a gross payment of $16,262.54, representing missed payments of his Residual Annuity from the date his lump sum pension benefit was paid, accumulated with interest.  Staley received no Residual Annuity.

In a letter to the Plan Administrator dated July 30, 2014, Staley stated that it had come to her attention that she should be receiving an annuity benefit in addition to her original lump sum benefit.  She requested that the Plan provide her the annuity benefit and an explanation of how it was calculated.  By letter dated November 4, 2014, Flavin, Colgate's Vice President for Global Compensation and Benefits, responded on behalf of the Committee and denied Staley's claim for an annuity benefit.

Counsel for Plaintiffs subsequently requested additional documents, records and information from Defendants and, by letter dated April 6, 2015, appealed both (1) the denial of Staley's claim for an annuity benefit, and (2) the determination of the amount of Caufield's Residual Annuity.[1]  Marsili, Colgate's Senior Vice President, Global Human Resources, denied Staley's claims appeal by letter dated June 4, 2015.  Marsili asserts in the letter that Staley's claims were released as part of the settlement agreement in *Colgate I*.  On June 3, 2016, Plaintiffs filed this putative class action lawsuit.

## II.     STANDARD

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306.  "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2015) (citation omitted); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that 'once a claim has

---

[1] Plaintiffs are beneficiaries of each other and assert claims in that capacity in addition to the claims they assert as participants in the Plan.

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 563).

## III.  DISCUSSION

### A.  Release of Claims

Plaintiffs' claims for benefits under the RAA (Count Two) are not barred by the release in the *Colgate I* settlement agreement.

"A release is a species of contract and is governed by principles of contract law." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001). The settlement agreement in *Colgate I* includes a New York choice-of-law provision. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993) (stating that even for federal causes of action, courts should look to state law in interpreting contractual indemnity provisions). Under New York law, the threshold question in a dispute over the meaning of a contract -- including a release -- is whether its terms are ambiguous. *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001) (applying New York law). "If the contract is capable of only one reasonable interpretation, *i.e.,* is unambiguous, we are required to give effect to the contract as written." *Id.* Where a contract is ambiguous, a court may look to extrinsic evidence to determine the parties' intent. *Golden Pac. Bancorp*, 273 F.3d at 517. "[A] release may not be read to cover matters which the parties did not desire or intend to dispose of." *Cahill v. Regan*, 157 N.E.2d 505, 510 (N.Y. 1959).

The release contained in the *Colgate I* settlement agreement unambiguously excludes Plaintiffs' claims for benefits under the RAA. Three provisions within § 12 of the settlement agreement make clear that the release does not apply to any claims under the RAA. First, the definition of "Plaintiffs' Released Claims" set forth in § 12(A)(1) states that "[f]or avoidance of

6

doubt, the foregoing does not include any claims arising under the Residual Annuity Amendment." Second, the "Residual Annuity Amendment Exclusion" described in § 12(D)(1) states, "Notwithstanding anything else herein that could potentially be construed to the contrary," Plaintiffs retain all claims that "are based upon, or arise under the Residual Annuity Amendment." Third, § 12(D)(2) provides that "Defendant [Plan] and/or Colgate may not assert in any future administrative or legal proceeding that the release set forth in this Agreement releases, bars, or precludes any claims under the Residual Annuity Amendment." These provisions unambiguously exclude from the release any and all claims under the RAA.

Plaintiffs' claims for benefits clearly "are based upon, or arise under" the RAA. The RAA provides that "a Member who, under any of Appendices B, C or D, is entitled to a greater benefit than his Accrued Benefit . . . and who chooses to receive his benefit under this Lump Sum Payment Option . . . shall receive . . . an additional benefit." In Count Two, Plaintiffs seek this "additional benefit" -- a Residual Annuity for Staley and a larger Residual Annuity for Caufield. Because the additional benefit was established by and exists only due to the RAA, Plaintiffs' claim for the additional benefit by definition arises under the RAA.

Defendants unpersuasively argue that Plaintiffs' claims for benefits under the RAA are covered by the release because they depend on arguments made in *Colgate I*. First, the release by its terms prevents Plaintiffs from bringing claims that were or could have been raised in *Colgate I*, not from making the same arguments in support of other, non-released claims. Second, the RAA uses terms, such as Accrued Benefit, that are defined elsewhere in the Plan. Deciding Plaintiffs' claims for benefits under the RAA inevitably will involve reference to provisions elsewhere in the Plan, but that does not change the fact that the claim arises under the RAA.

The release in the *Colgate I* settlement agreement unambiguously excludes Plaintiffs' claims for benefits under the RAA. Defendants' motion to dismiss Plaintiffs' claims for benefits as barred by the release is therefore denied.

### B.   Statute of Limitations

Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiffs failed to plead timely claims. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." (citing Fed. R. Civ. P. 8(c)(1))). Dismissal based on an affirmative defense at the complaint stage is warranted only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr*, 547 F.3d at 426 (emphasis omitted) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

#### 1.   Claim for Benefits - Count II

Plaintiffs' claims for benefits under the RAA are timely.

ERISA does not prescribe a statute of limitations period for actions to recover benefits under ERISA § 502(a), 29 U.S.C. § 1132(a). *Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012). "Therefore . . . the applicable limitations period in this § 1132 action is 'that specified in the most nearly analogous state limitations statute' of the forum state." *Id.* Here, New York's six-year limitations period for contract actions, N.Y. C.P.L.R. § 213, applies as it is most analogous to § 1132 actions. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). "[W]hen a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues." *Guilbert v. Gardner*, 480 F.3d

140, 149 (2d Cir. 2007) (discussing accrual of ERISA cause of action).  Under federal common law, a court "generally employs the discovery rule, under which a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."  *Guilbert*, 480 at 149.

Plaintiffs' claim for benefits under the RAA could not have accrued earlier than 2011, when Plaintiffs first learned of the RAA's existence.  Because Plaintiffs filed the Complaint in June 2016 -- within six years of the earliest possible accrual date -- their claims for benefits are timely, and nothing on the face of the Complaint suggests otherwise.

Defendants' contrary arguments fail.  First, Defendants argue that Plaintiffs' claims for benefits accrued when they elected to receive their benefits in the form of a lump sum in the 1990s because the forms provided in conjunction with that election clearly repudiated any notion that they would receive an annuity in addition to a lump sum benefit.  This argument assumes that Plaintiffs' claims are based on alleged miscalculations made at the time they received their lump sums.  As explained above, Plaintiffs' claims arise under the RAA.  The RAA was not enacted until 2005; so Plaintiffs' rights under the RAA could not possibly have accrued in the 1990s.  *See Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 593 (S.D.N.Y. 2009) ("A claim addressed to the amendment of an ERISA plan accrues '*at the earliest,* on the date of the plan amendment.'" (quoting *Romero v. Allstate Corp.,* 404 F.3d 212, 222 (3d Cir. 2005))).

Second, Defendants rely on *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 726 F.3d 936, 941–42 (7th Cir. 2013), to argue that the RAA did not cause a new injury to Plaintiffs and therefore did not restart the limitations period.  In addition to being non-binding in the Second Circuit, *Ruppert* is factually distinguishable.  In *Ruppert*, the plan participants challenged the "projection rate" the defendant used to estimate the interest credits that would have accrued

9

to an early retiree's account had he not left until normal retirement age. *Id.* at 939. To moot the lawsuit, the defendant amended the plan to adjust the projection rate retroactively. *Id.* at 940. The district court ruled that the amendment was a further violation of ERISA and restarted the limitations period for participants whose claims otherwise would have been untimely. *Id.* at 941. The Seventh Circuit reversed, explaining that "[i]t was indeed a fresh violation, but it did not revive claims, based on the projection rate, extinguished by the statute of limitations because they had accrued when the claimants had received their lump sum payouts more than six years before suit was filed." *Id.* at 941–42. Here, the RAA did not adjust a rate used to determine benefits but rather created an entirely new benefit. Plaintiffs' current claims were not extinguished and revived by the RAA; they arose for the first time after the RAA was enacted. *Ruppert*'s holding is therefore inapposite in this case.

Defendants' motion to dismiss Plaintiffs' claims for benefits as untimely is denied.

### 2. Plan Document Violations - Count IV

In Count Four, Plaintiffs allege that Defendants violated ERISA § 102, 29 U.S.C. § 1022, by failing to disclose and describe the RAA or the Residual Annuity benefit in an SPD or SMM. This claim is timely.

ERISA does not prescribe a statute of limitations for disclosure claims under § 102. *See Osberg v. Foot Locker, Inc.*, 656 F. Supp. 2d 361, 369–70 (S.D.N.Y. 2009) ("*Osberg I*") (noting in case with a § 102 claim that "ERISA provides no statute of limitations for civil enforcement actions other than breach of fiduciary duty claims under ERISA § 413"), *aff'd in part and vacated in part on other grounds*, 555 F. App'x 77 (2d Cir. 2014). As stated above, in this situation courts apply the most similar state statute of limitations and look to federal common law to determine when the cause of action accrued. *Guilbert*, 480 F.3d at 148–49.

The New York statute of limitations applicable to Plaintiffs' disclosure claims is the three-year period governing statutory violations, C.P.L.R. § 214. *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 533 (S.D.N.Y. 2012) ("*Osberg II*"), *aff'd in part and vacated in part on other grounds*, 555 F. App'x 77 (2d Cir. 2014) ("[W]e need not conclusively decide whether [plaintiff's] § 102(a) claim is subject to a three- or six-year statute of limitations."). In *Osberg I*, the court initially determined that a six-year limitations period applies to disclosure claims because "the judicially inferred statute of limitations for ERISA actions in New York State is six years, based on the statute of limitations for contract actions." 656 F. Supp. 2d at 370 (citing *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 55 (2d Cir. 2009)). After the Supreme Court decided *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), the court in *Osberg* held that the appropriate limitations period for disclosure claims is three years. *Osberg II*, 907 F. Supp. 2d at 533. "*Amara* has now clarified that an SPD is not a contract -- its terms are not subject to enforcement," so the most similar New York statute of limitations is not the six-year period governing contract claims but the three-year period governing statutory violations. *Id.*; *see Amara*, 563 U.S. at 436 (referring to both SPDs and SSMs, "we cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) necessarily may be enforced . . . as the terms of the plan itself").

Under the discovery rule, Plaintiffs' disclosure claims accrued when Plaintiffs discovered, or with due diligence should have discovered, the injury that is the basis of the litigation. *Guilbert*, 480 F.3d at 149. Caufield, who was a named plaintiff in *Colgate I*, discovered or should have discovered the failure to disclose the RAA no later than July 2011, when Defendants provided a copy of the RAA to his attorney. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (imputing attorney's knowledge to the client for purposes of determining

11

when the client's claim accrued). Caufield was aware of the failure to disclose by July 2011. Applying the three-year limitations period to the July 2011 accrual date, Caufield's disclosure claim ordinarily would be time barred.

The Complaint, however, makes allegations that support at least a colorable argument for equitable tolling of the limitations period such that Caufield's claim would be timely. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir. 2004) ("[W]e hold that failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations."). The Complaint alleges in substance that Defendants hid the existence of the RAA from Plaintiffs, and entered into a settlement in principle in May 2010 for the underpayment of benefits under the Plan. Although not explicitly pleaded, the Complaint implies that the resulting settlement could have included a broad release including Plaintiff's as yet undiscovered RAA claims. After Plaintiffs became aware of the RAA, they insisted that the ultimate October 9, 2013, settlement agreement exclude the RAA claims. Because these alleged facts may provide a basis to toll the statute of limitations until October 2013, Defendant has not shown that "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr*, 547 F.3d at 426. Accordingly, Caufield's disclosure claim survives Defendants' timeliness challenge, at least at this stage in the litigation.

Staley's disclosure claim is also timely. She was a class member but not a named plaintiff in *Colgate I*. The knowledge of class counsel in *Colgate I* cannot be imputed to unnamed class members prior to December 16, 2013, when the Court preliminarily certified the settlement class in *Colgate I* -- and perhaps not even then. *See Schwab v. Philip Morris USA,*

12

*Inc.*, No. 04 Civ. 1945, 2005 WL 2467766, at *3 (E.D.N.Y. Oct. 6, 2005) ("Unnamed class members have not yet 'consented' to be represented by putative class counsel; these attorneys cannot be their agent for purposes of imputing knowledge of danger. The role of class counsel is akin to that of a judicially appointed fiduciary, not that of a privately retained attorney." (citing Restatement (Second) of Agency § 14F)). Applying the three-year limitations period to the earliest possible accrual date in December 2013, Staley's disclosure claim is timely. In sum, Defendants' motion to dismiss Count Four is denied.

### 3. Breach of Fiduciary Duty - Count V

Count Five alleges that Defendants breached their fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a), by (1) concealing the RAA's existence and (2) willfully misreading and misrepresenting the RAA in the course of determining Plaintiffs' benefits under the RAA. Count Five is timely as to both alleged breaches.

For breach of fiduciary duty claims, ERISA § 413, 29 U.S.C. § 1113, prescribes "three alternative limitations periods" that "depend[] on the underlying factual circumstances." *Janese v. Fay*, 692 F.3d 221, 227–28 (2d Cir. 2012).

> The first period, applicable in the absence of any special circumstances, is six years from the date of the last action that was part of the breach. The second period is three years, applicable and beginning when a putative plaintiff has "actual knowledge" of the violation . . . . The third period is six years, applicable where a complaint alleges fraud or concealment with the requisite particularity.

*Id.* at 228 (internal citations omitted); *see* 29 U.S.C. § 1113.

Plaintiffs' breach of fiduciary duty claim based on concealment of the RAA is governed by the third period -- six years -- prescribed by § 1113. To qualify for the third period, a plaintiff must allege fraud or concealment in accordance with Federal Rule of Civil Procedure 9(b)'s particularity requirement, which requires a plaintiff to "specify the time, place, speaker, and

13

content of the alleged misrepresentations" or omissions. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001); *see Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (the same pleading requirements apply whether the fraud is based on statements or omissions). Here, the Complaint satisfies Rule 9(b) by alleging that (1) since the RAA was enacted in 2005, (2) in whatever communications were or should have been provided to Plan participants, (3) Defendants including the Plan's sponsor and administrator, (4) failed to disclose the existence of the RAA. Also, contrary to Defendants' argument, failing to disclose the RAA may be a breach of fiduciary duty. Although "the act of amending a pension plan does not trigger ERISA's fiduciary provisions," the subsequent decision to conceal and delay implementation of the RAA is a matter of plan administration, to which ERISA's fiduciary duties apply. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91 (1996).

The third period prescribed by § 1113 "is tolled until the plaintiff discovers, or should with reasonable diligence have discovered, the breach." *Janese*, 692 F.3d at 228. Plaintiffs did not know of and could not reasonably have discovered Defendants' alleged concealment of the RAA until July 2011, when Defendants first produced a copy of the RAA to Caufield's attorney. Applying the six-year limitations period to the July 2011 accrual date, Plaintiffs' fiduciary duty claim based on concealment of the RAA is timely.

Plaintiffs' breach of fiduciary duty claim based on the alleged misreading and misrepresentation of the RAA during Plaintiffs' claims process is also timely, regardless of which limitations period applies. The earliest date this claim could have accrued was in August 2014, when Defendants first informed Caufield of the amount they determined he was entitled to under the RAA. Even applying the three-year period prescribed by § 1113, Plaintiffs' claims are timely. Defendants' motion to dismiss Count Five is denied.

C. **Failure to State a Claim**

1. **Denial of Right to Documents - Count I**

Count One adequately pleads a claim for relief under ERISA § 502(a), 29 U.S.C. § 1132(a), as result of Defendants' denial of Plaintiffs' requests for documents, records and information. A plan's claims procedure, in order to comply with the ERISA regulations, must "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). The regulations also define relevance:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (i) Was relied upon in making the benefit determination; (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or] (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

Following the denial of her claim for benefits under the RAA, Staley requested all relevant documents, including "all documents (of any kind) and correspondence that you [the Committee] and/or Ms. Flavin between yourselves and/or with other persons regarding the November 4, 2014 denial letter and the calculations referenced in that letter." Defendants argue that everything relevant under the regulations was produced to Plaintiffs, as evidenced by the documents attached to the Complaint. This argument is misplaced as it goes to the merits of the claim, not the sufficiency of the pleading. Also, the inclusion of several versions of the Plan document and SPD with the Complaint does not make it implausible that Defendants have additional relevant material. For example, the Complaint alleges that Defendants possess but

15

failed to produce correspondence between Flavin, other members of the Committee and/or other persons, including in-house lawyers, consultants, actuaries, outside benefits counsel and litigation counsel in *Colgate I*. Such materials would be relevant to Plaintiffs' claims if they were "submitted, considered, or generated in the course of making the benefit determination," even if they ultimately were not relied upon. 29 C.F.R. § 2560.503-1(m)(8)(ii). Drawing all inferences in Plaintiffs' favor at this stage of the proceedings, the Complaint states a claim for denial of the right to documents. Defendants' motion to dismiss Count One is therefore denied.

### 2. Contempt of Court - Count III

Count Three adequately pleads contempt of court. A party moving for contempt "must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009).

Here, the order Defendants allegedly failed to comply with is the Court's July 8, 2014, order approving the *Colgate I* settlement. That order incorporated by reference § 12 of the settlement agreement, which states that "Defendant [Plan] and/or Colgate may not assert in any future administrative or legal proceeding that the release set forth in this Agreement releases, bars, or precludes any claims under the Residual Annuity Amendment." The Complaint alleges that Defendants repeatedly asserted in their denial of Staley's claims appeal that the release barred her claims, despite the language in the settlement agreement and incorporated in the Court's order that appears to prohibit them from doing so. As the Complaint pleads all the elements required for a contempt motion, Defendants' motion to dismiss Count Three is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants Colgate-Palmolive Co., Colgate-Palmolive Co. Employees' Retirement Income Plan, Laura Flavin, Daniel Marsili and the Employee Relations Committee of Colgate-Palmolive Co.'s motion to dismiss is DENIED.

The Clerk of Court is directed to close the motion at Docket No. 25.

Dated: February 24, 2017
      New York, NY

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**