**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PAUL CAUFIELD and**<br>**REBECCA M. STALEY,**<br><br>**On behalf of themselves and on**<br>**behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>- v-<br><br>**COLGATE-PALMOLIVE CO.,** *et al*.<br><br>**Defendants.** | **No. 16-cv-4170 (LGS)**<br>**[rel. 07-cv-9515-LGS]**<br><br><br><br>**Judge Lorna G. Schofield** |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**
**AND FOR APPOINTMENT OF CLASS COUNSEL**

Eli Gottesdiener
Steven D. Cohen
Albert Huang
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Telephone:   (718) 788-1500
Telecopier:   (718) 788-1650
Email:        eli@gottesdienerlaw.com

Dated:  May 26, 2017                    *Attorneys for Plaintiffs and the proposed Class*

## TABLE OF CONTENTS

INTRODUCTION.....................................................................................................1

FURTHER BACKGROUND...................................................................................3

THE PROPOSED CLASS .......................................................................................7

ARGUMENT ...........................................................................................................9

I.    The Proposed Class And Its Claims Should Be Certified And
Ms. McCutcheon Appointed To Represent The Class .................................10

    A.    The Proposed Class and Claims Satisfy the Requirements
of Rule 23(a)...........................................................................................10

        1.    The Class Is So Numerous that Joinder
Would be Impracticable ...............................................................11

        2.    The Claims Present Common Questions of
Law or Fact...................................................................................11

        3.    Ms. McCutcheon's Claims Are Typical of the Claims
of the Proposed Class ...................................................................12

        4.    Ms. McCutcheon and Undersigned Counsel Will
Fairly and Adequately Protect the Interests of the Class.....................13

    B.    The Proposed Class Satisfies Rule 23(b)(1)(A), (b)(1)(B)
and/or (b)(2)............................................................................................14

        1.    The Requirements of Rule 23(b)(1)(A) and/or (b)(1)(B)
Are Met .........................................................................................14

            a.    Risk of Incompatible Standards of Conduct ...........................14

            b.    Risk of Adjudications That, As a Practical Matter,
Would Be Dispositive as to Others ...............................................16

        2.    The Requirements of Rule 23(b)(2) Are Met.................................18

    C.    The Requirements of Rule 23(b)(3) Are Also Met ..........................21

    D.    Undersigned Counsel Should Be Appointed Class Counsel
Under Rule 23(g) ...................................................................................22

**CONCLUSION** ............................................................................................................................**23**

## TABLE OF AUTHORITIES

**CASES**                                                                                        **Page(s)**

*Allison v. Citgo Petroleum*, 151 F.3d 402 (5th. Cir. 1998)............................................................20

*Amara v. CIGNA Corp.*, 925 F.Supp.2d 242 (D. Conn. 2012)....................................................21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).......................................................9, 14, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct. 1184 (2013)............................................9

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52 (2d Cir. 2000) ..........................13

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
     270 F.R.D. 488 (N.D. Cal. 2010)...........................................................................................16

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
     269 F.R.D. 340 (S.D.N.Y. 2010) .............................................................................................9

*Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y. 1996) .......................................15

*Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003)............................20

*Caufield v. Colgate-Palmolive Co. Employees' Retirement Income Plan*,
     No. 4:07-cv-0016 SEB-WGH (S.D. Ind. Feb. 12, 2007)......................................................2

*Church v. Consolidated Frgt'ways*, 1991 WL 284083 (N.D. Cal. 1991)......................................18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
     502 F.3d 91 (2d Cir. 2007).............................................................................................. 21-22

*Cottillion v. United Refining Co.*, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013)..........................16

*Esden v. Ret. Plan of the First Nat'l Bank of Boston*, 182 F.R.D. 432 (D. Vt. 1998),
     *aff'd*, 229 F.2d 154 (2d Cir. 2000) .................................................................................12, 15

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) .......................................................17

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ........................................19

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ........................................................................9

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012)..........................................19

*Helms v. Local 705 Int'l Bhd. of Teamst. Pens. Plan*,
   1998 WL 182513 (N.D. Ill. Apr. 16, 1998) ......................................................18

*Indergit v. Rite Aid Corp.*, 2013 WL 5380253 (S.D.N.Y. Sept. 26, 2013)...................................11

*In re Amsted Indus., Inc. ERISA Litig.*, 2002 WL 31818964 (N.D. Ill. Dec. 16, 2002) ...............18

*In re Arakis Energy Corp. Sec. Litig.*, 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) ...................2

*In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172 (S.D.N.Y. 2006) ............................15

*In re Colgate-Palmolive Co. ERISA Litigation*,
   Master File No. 07 Civ. 9515 (*Colgate I*)............................................................................2

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) ............................ 12-13

*In re J.P. Morgan Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007)....................................17

*In re Puda Coal Securities Inc., Litig.*, 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013)...................11

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2d Cir. 2008)...................................9, 21

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364 (7th Cir. 2012) ........................20

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) .........................................................14

*LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448 (N.D.N.Y. 2003)..............21

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976)........................................................17

*Laurent v. PricewaterhouseCoopers, LLP*, No. 06–CV–2280 (JPO),
   2014 WL 2893303 (S.D.N.Y. June 26, 2014) ....................................................................2

*Lyell v. Farmers Grp. Inc. Employees' Pens. Plan*,
   2008 WL 5111113 (D. Ariz. Dec. 3, 2008) ....................................................................16

*Mezyk v. U.S. Bank Pension Plan*, 2011 WL 6729570 (S.D. Ill. Dec. 21, 2011) ........................16

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................................22

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)............................................................... 21-22

*Norman v. Conn. State Bd. of Parole*, 458 F.2d 497 (2d Cir. 1972)............................................11

*Novella v. Westchester Cty.*, 661 F.3d 128 (2d Cir. 2011) ..........................................................11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................16

*Patrick v. AK Steel Corp.*, 2008 WL 4758673 (S.D. Ohio. Oct. 27, 2008) ...................................18

*Pender v. Bank of America Corp.*, 269 F.R.D. 589 (W.D.N.C. 2010) ....................................16, 18

*Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303 (D. Conn. 2004) ...........................10

*Richards v. FleetBoston Financial Corp.*, 2006 WL 2979373 (D. Conn. Oct. 16, 2006) ............15

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) .................................................................. 11-12

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ....................................13

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    2012 WL 2930205 (W.D. Wis. July 2, 2012) .................................................................21

*Savani v. Washington Safety Management Solutions, LLC*,
    2012 WL 3757239 (D.S.C. Aug. 28, 2012) .............................................................14, 17

*Schutte v. Maleski*, 1993 WL 218898 (E.D. Pa. June 18, 1993) ..................................................18

*Sessions v. Owens-Ill., Inc.*, 267 F.R.D. 171 (M.D. Pa. 2010) ....................................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........................9

*Thompson v. Linvatec Corp.*, 2007 WL 1526418 (N.D.N.Y. May 22, 2007) ...............................10

*Walker v. Monsanto*, 04-cv-436-JPG-PMF (S.D. Ill. May 22, 2008) ...........................................18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ...............................................9, 14, 18-19

## STATUTES, RULES AND REGULATIONS

29 C.F.R. § 2560.503-1 ....................................................................................................................1

Fed.R.Civ.P. 23 .............................................................................................................................10

Fed.R.Civ.P. 23(a) ........................................................................................................................11

Fed.R.Civ.P. 23(a)(1) ....................................................................................................................11

Fed.R.Civ.P. 23(a)(3) ....................................................................................................................12

Fed.R.Civ.P. 23(a)(4) ....................................................................................................................13

Fed.R.Civ.P. 23(b)(1) ................................................................................................14

Fed.R.Civ.P. 23(b)(1)(B) ...........................................................................................16

Fed.R.Civ.P. 23(b)(2) ................................................................................................18

Fed.R.Civ.P. 23(b)(3) ................................................................................................22

Fed.R.Civ.P. 23(c)(1)(B) ...........................................................................................23

Fed.R.Civ.P. 23(g) ....................................................................................................23

## OTHER AUTHORITIES

5 James W. Moore et al., *Moore's Federal Practice* § 23.42[3][c] (3d ed. 2010) ........................16

*Advisory Committee Notes to the 1966 Amendments to Rule 23*, 39 F.R.D. 69 (1966)................17

Gary L. Sasso, *Defense of Federal Class Actions*, 710 PLI/Lit 149 (July 2004) ..........................15

## INTRODUCTION

In this ERISA action asserting claims for, among other things, unpaid benefits under the Colgate-Palmolive Co. Employees' Retirement Income Plan (the "Plan")—and in particular, benefits due under the March 2005 Residual Annuity Amendment (the "RAA" or the "Amendment") to the Plan—Plaintiffs Rebecca McCutcheon (formerly Staley) and Paul Caufield, through undersigned counsel, move pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify the proposed class described below and the unpaid benefit claims asserted under Count Two of the Complaint (Dkt. 1), and to appoint undersigned counsel as class counsel.[1]

Consistent with their March 17, 2017 request of the Court for this leave to file the instant motion, *see* Dkt. 45, Plaintiffs are not at this time moving for certification of the other Counts of the Complaint, even though they are all integral to Plaintiffs' prosecution of this action.[2]

---

[1] Plaintiff Staley remarried after the Complaint was filed and is now known as Rebecca McCutcheon. Plaintiffs accordingly refer to her herein as Rebecca McCutcheon.  Plaintiffs also respectfully ask that the Court modify the case caption to *McCutcheon, et al. v. Colgate-Palmolive Co., et al.* to reflect her current name and her role as lead plaintiff—a request that Defendants have indicated they do not oppose, *see* Dkt. 50-1 at 8, § 12.E ("Defendants do not oppose Plaintiffs' request to restyle this matter").

[2] As can be seen from their description, these counts impact, for example, Defendants' claim to deference but do not necessarily require class certification.  In Count One, Plaintiffs allege that Colgate violated the governing claims regulation, 29 C.F.R. § 2560.503-1, by failing to provide Plaintiffs with all "documents, records and other information" to which the regulation entitled them in connection with their benefit claim and appeal.  In Count Three, Plaintiffs ask that Colgate be found in contempt of this Court's July 2014 Order because Colgate argued, in violation of that Order, that Plaintiffs' administrative claim was released by the partial settlement, even though the Residual Annuity claim was clearly carved out of the agreement and that agreement explicitly barred Colgate from defending against such a claim on that basis.  In Count Four, Plaintiffs allege that Colgate violated and is continuing to violate ERISA's SPD requirements by never providing participants with an SPD that discloses the RAA and how RAA benefits are determined in a manner calculated to be understood by the average Plan participant.  In Count Five, Plaintiffs allege fiduciary breaches not merely for Colgate's years of concealment of the RAA's existence to save Colgate money, but also for its very recent 2014-2015 willful misreading of the RAA's terms, misrepresentation of the RAA's provisions in its August 2014 communication with RA recipients, and interference with Plaintiffs' right to administrative due process during the 2014-2015 claims process.  The Court sustained each of these Counts, as well as Count Two, in denying Defendants' motion to dismiss. *See* 2/24/17 Order (Dkt. 35) at 8-16, 2017 WL 744600, at *4-8.

\*        \*        \*

Although both Plaintiffs jointly file this motion, they propose only Ms. McCutcheon as a class representative.[3]  As shown below, Ms. McCutcheon is more than adequate to represent the proposed class.  Certification should be granted because all of the requirements of Rules 23(a) and (b) are satisfied here and this case is ideally suited for class treatment under Rule 23.

ERISA pension benefit cases are routinely certified as class actions and ideally suited for treatment under Rule 23 where, as here:  the proposed class representative brings the same claims raising issues common to all members of the proposed class; the claims have nothing to do with the individual characteristics of the plan participants; the factual and legal contentions that the proposed representative advances on her own behalf apply to each member of the proposed class; and the relief she seeks for herself is the same sought on behalf of the proposed class.  There is no meaningful difference for certification purposes between this case and the many other pension benefit cases that have been certified under Rule 23 discussed below.  As shown below, certification is proper here, as it was in *Colgate I*, under Rule 23(a) and Rule 23(b)(1), (b)(2), and/or (b)(3).

---

[3] As Mr. Caufield informed Defendants in early May, through undersigned counsel, he has developed a thyroid condition that requires him to be on medication that, among other things, makes long distance travel a hardship.  *See* 5/26/17 Declaration of Eli Gottesdiener, Ex. 1A.  Mr. Caufield lives close to Louisville, Kentucky and offered to be deposed there, *id.* & Ex. 1C, but Defendants declined, insisting that Mr. Caufield present himself in New York or withdraw as a class representative, *see* Exs. 1B & 1D Plaintiffs do not agree that Mr. Caufield is obligated to present himself for a deposition in New York in order to serve as a class representative, particularly under the circumstances here:  this case is a continuation of *In re Colgate-Palmolive Co. ERISA Litigation*, Master File No. 07 Civ. 9515 ("*Colgate I*"), *see* 2/24/17 Order (Dkt. 35) at 1, and Mr. Caufield did not select this district as the forum for *Colgate I*, as he filed his 2007 Complaint in the Southern District of Indiana, *see* Case No. 4:07-cv-0016 SEB-WGH (S.D. Ind. Feb. 12, 2007), Dkt. 1.  To avoid an unnecessary dispute over this issue, Plaintiffs are currently proposing only Ms. McCutcheon as a class representative.  Just as there is no requirement that a class representative be a named plaintiff, *see*, *e.g.*, *In re Arakis Energy Corp. Sec. Litig.*, 1999 WL 1021819, at *13 (E.D.N.Y. Apr. 27, 1999), there is no requirement that all named plaintiffs serve as class representatives, *see*, *e.g.*, *Laurent v. PricewaterhouseCoopers, LLP*, No. 06–CV–2280 (JPO), 2014 WL 2893303, at *4 n.6 (S.D.N.Y. June 26, 2014) (Oetken, J.).

2

## FURTHER BACKGROUND

This action arises out of the Plan amendment that Colgate adopted in March 2005, frequently referred to as the Residual Annuity Amendment.

As Defendants have admitted, under the law, the value of a benefit paid to a participant in a defined benefit plan when paid in whole or in part in the form of a lump sum cannot be less than the value of the participant's age 65 annuity, using statutorily-mandated assumptions (frequently referred to as the "417(e) assumptions"). *See* Ans. (Dkt. 49) ¶ 57. In other words, pension plans are not required to offer participants the option of receiving some or all of their pension in the form of a lump sum, but if they do, they cannot deprive the participants of any of the value (calculated using statutory assumptions) of the annuity payable at normal retirement age. *Id.*

By March 2005, Colgate acknowledged internally that, since July 1989, Defendants had been paying lump sum benefits to participants in violation of law and that caused employees to suffer forfeitures of their nonforfeitable pension benefits because the lump sums they had received were less than the legally mandated benefit payment to which they were statutorily entitled. *See* Compl. Ex. 6 (Dkt. 21-6), Defs. 6/4/15 Ltr. at 5; *see also* Ans. ¶ 68.

Accordingly, in an effort to bring the Plan into compliance with the law, Colgate enacted the Residual Annuity Amendment in March 2005.[4] The RAA created a new, additional right, *see*

---

[4] The text of the RAA reads:

5. Effective as of July 1, 1989, Section 6.4(a)(i) is amended by adding at the end thereof the following paragraphs:

Effective as of July 1, 1989, a Member who, under any of Appendices B, C or D, is entitled to a greater benefit than his Accrued Benefit (as defined in Section 1.2), and who chooses to receive his benefit under this Lump Sum Payment Option, which is the Actuarial Equivalent of his Accrued Benefit (as defined in Section 1.2), shall receive in addition to such lump sum payment an additional benefit, commencing at the same time and payable in the standard form applicable to such Member

Compl. Ex. 3 (Dkt. 21-3) at 4, ¶ 5, second sentence ("such additional benefit . . .")—to an

annuity, supplementing the lump sum—and the RAA did so, Defendants have admitted, *on a*

*retroactively effective basis* as of July 1, 1989, Ans. ¶ 107, making it as if this provision had been

in effect and part of the Plan throughout that entire time period. Defendants have admitted the

point of the RAA was that when the value of the two partial payments (the lump sum and the

residual annuity) are summed, they will together be an amount not less than the value of the

participants' accrued benefit under the Appendix. Compl. Ex. 6 (Dkt. 21-6), Defs. 6/4/15 Ltr. at

5 ("the Plan was amended to provide that the lump sum paid plus the present value of the

Residual Annuity valued at age 65 would always at least equal the present value, determined

using statutory actuarial assumptions, of the annuity benefit under Appendix B, C or D, as

applicable, valued at age 65"); Defs. 5/22/17 Ltr. (Dkt. 57) at 3 ("The intent and language of the

RAA show that it was to ensure that those who elected a lump sum received all of the benefits to

which they were entitled under the law").

　　Notably, nothing in the text of the RAA made any distinction between the type of benefit

formula "under Appendix B, C or D" or which portion of the Appendix that the retroactively

corrective provisions of the Amendment covered, simply referring, without distinction, to "the

age 65 single life annuity benefit otherwise payable to the Member under Appendices B, C or D,

---

under Sections 6.2 or 6.3. A Member may not elect any other form of payment option with respect to this additional benefit. Such additional benefit shall be computed by subtracting the age 65 single life annuity Actuarial Equivalent amount of the Member's lump sum payment from the age 65 single life annuity benefit otherwise payable to the Member under Appendices B, C or D, as applicable, and applying to such remainder early retirement reductions applicable to the Member's benefit based on the Member's age at benefit commencement. For purposes of this paragraph, the early retirement reductions will be based upon factors calculated using the basis described below in subsection (A) below. (A) For purposes of determining the early retirement reduction factors to be used in the calculation of the benefit defined in the immediately preceding paragraph, the following definition of actuarial equivalence shall be used: the Applicable Interest Rate and the Applicable Mortality Table in effect on the date that the additional life annuity benefit commences.

Compl. Ex. 3 (Dkt. 21-3) at 4, ¶ 5.

4

as applicable."  Compl. Ex. 3 (Dkt. 21-3) at 4, ¶ 5, third sentence.  Participants covered by the Amendment were entitled, by virtue of Appendices C or D, to the "larger of" two benefits defined in the Appendix.  Their pension entitlement was the better of the annuity calculated under: (i) the Plan's pre-July 1989 final average pay formula, **or** (ii) the new "PRA" (Personal Retirement Account or cash balance) formula (including a benefit attributable to any employee contributions).  *See* Compl. Ex. 9B (Dkt. 21-10), 1994 Plan Appendix C § 2(b), at 75-79.[5]

Defendants illustrated this larger-of Appendix benefit entitlement in the case of Ms. McCutcheon in worksheets Defendants generated in February 1994 when Ms. McCutcheon (who was married to Mr. Caufield at the time and known as Ms. Caufield) left Colgate and requested a distribution of her benefit.  As Defendants have admitted, those worksheets show the Plan calculating her benefit in 1994 as the larger of her Appendix C § 2(b)(i) traditional formula benefit—**$731.31** per month, *see* Compl. Ex. 28 (Dkt. 21-32), 1994 Worksheets, at 4, 7, 9, or her Appendix C § 2(b)(ii) PRA-plus-Employee Contribution benefit—**$1,125.38** per month, *see id.* at 4, 8, 11.  *See* Ans. ¶¶ 23, 209, 211 (admitting that the "Plan administrator prepared and provided Plaintiff Staley with a Pension Benefit Election Form prepared as of February 5, 1994," that the Plan provided the 1994 Worksheet "to inform her of her *pension benefit*," and that "as calculated in the 1994 Worksheet, Plaintiff Staley had the option of electing her benefit under the Grandfather Plan ($731.31) or Personal Retirement Account, including employee contributions ($1,125.38)") (emphasis added); *see also* Pls. Mtn. to Dismiss Opp. at 20 n.29.

---

[5] The benefits promised to employees with pre-July 1, 1989 benefits under the Appendix actually come in 3 basic varieties:  Appendix C § 2 benefits for employees who made employee contributions such as Plaintiffs; Appendix D § 2 benefits for employees who did not make employee contributions but satisfied certain age/service requirements; and Appendix C § 3 benefits for employees who did not make employee contributions and who did not meet the age service requirement under Appendix D.  Although these 3 types of Appendix benefits differ in detail, each benefit is determined the same way structurally.  In each case, the participant is entitled to the "**larger of**" two kinds of annuities:  one annuity based on the pre-July 1, 1989 formula and another annuity based on the PRA annuity formula.  Whichever annuity is "larger," is the participant's winning Appendix benefit.

Yet after failing for nearly 10 years to implement the Amendment in favor of those participants paid prior to its enactment, *see* Defs. Mtn. to Dismiss Memo (Dkt. 26) at 2 (admitting but providing no explanation for how this possibly could have happened), Defendants mysteriously now calculate Ms. McCutcheon's Appendix C benefit for purposes of the Residual Annuity calculation as **only the $731.31—**and what is more, Defendants now say, without any intelligible explanation, that the $731.31 was overstated and her entire Appendix C benefit is only **$699.58**.  *See* Ans. ¶¶ 229, 320.  A key dispute in this case that affects Ms. McCutcheon and approximately 1,200 other participants in exactly the same way is the head-scratching question Plaintiffs have labeled "Error 1":  how can Defendants now ignore participants' PRA-annuity entitlements under the Appendix (indeed, as they themselves calculated them), consistent with the terms of the Plan and/or the law?[6]

As the summary above suggests, Ms. McCutcheon additionally requests, for herself and everyone else in the proposed class, a ruling by the Court that Defendants also miscalculated their Appendix C § 2(b)(i) traditional formula benefits when implementing the Amendment.  She contends Defendants got that calculation wrong under the heading "Error 2" by applying the wrong Plan provision to determine participants' applicable Estimated Social Security Primary

---

[6] A secondary aspect of Error 1 is another question that identically affects all members of the proposed class who were paid at an age under 55, as Ms. McCutcheon was, namely, that Defendants used the incorrect interest rate—the 20-year Treasury bill rate *minus* 2% for years prior to age 55—when projecting the account balance from the Benefit Commencement Date to age 65 for the period prior to age 55, whereas the Plan clearly and unambiguously required use of the 20-year Treasury bill rate *plus 1%* when determining an annuity payable at age 65, for the entire period from determination to age 65.  *See* Compl. Ex. 4 (Dkt. 21-4), Pls. 4/6/15 Claim Appeal Ltr. at 5, 9, 15 n.6, 19-22 & n.4, 24; *see also* Compl. ¶¶ 340-43, 346-47 (alleging Ms. McCutcheon's requests for information about this aspect of Error 1 in her January 6, 2015 letter, Compl. Ex. 24 (Dkt. 21-28) at 7-8, and Defendants' failure to respond).

Insurance Amount ("PIA") (the higher the PIA is, the lower the Appendix benefit).  *See* Compl. ¶ 100; Compl. Ex. 4 (Dkt. 21-4), Pls. 4/6/15 Claim Appeal Ltr. at 6, 26-31.[7]

Additionally, under the heading "Error 3," she contends that Defendants miscalculated her and all other proposed class members' Residual Annuities whenever their Residual Annuity is based on their winning Appendix C § 2(b)(ii) formula benefit by improperly applying a prohibited pre-retirement mortality discount ("PRMD") in the calculation of that winning Appendix C § 2(b)(ii) formula benefit.  *See* Compl. ¶¶ 102-03; Compl. Ex. 4 (Dkt. 21-4), Pls. 4/6/15 Claim Appeal Ltr. at 6-7, 31-33; Compl. Ex. 9A (Dkt. 21-9), 1994 Plan §§ 4.2(b) and 5.1, at 21-22, 25; Compl. Ex. 9B (Dkt. 21-10), 1994 Plan Appendix B § 11, at 70-72.

Finally, as to whichever one of the two Appendix benefits is the winning ("larger of") benefit, Ms. McCutcheon contends under the heading "Error 4" that Defendants improperly reduced participants' Residual Annuities by improperly offsetting them with payments received as part of the *Colgate I* settlement in violation of the *Colgate I* Settlement Agreement and/or the law and, to the extent the offset would be allowable, discounting the payment from a date prior to the date actually paid.  *See* Compl. ¶¶ 105-06; Compl. Ex. 4 (Dkt. 21-4), Pls. 4/6/15 Claim Appeal Ltr. at 7, 36-40.

### THE PROPOSED CLASS

Plaintiffs propose that the Court certify a class, substantially similar to the class alleged in the Complaint, comprised of:

> Any person who, under any of Appendices B, C or D of the Colgate-Palmolive Company Employees' Retirement Income Plan ("Plan"), is entitled to a greater benefit than his or her Accrued Benefit as defined in Plan § 1.2, provided such person received a lump sum payment from the Plan, and the beneficiaries and estates of any such person.

---

[7] It is possible that this error is restricted to only those participants like Ms. McCutcheon who were paid before age 55.  It is also probable that Defendants used the wrong compensations in this determination (although Defendants' failure to respond to questions presented during the appeals process have made it impossible for Plaintiffs to yet determine whether that is the case).

*See* Compl. ¶ 398.  This proposed definition tracks the wording of the Amendment's first sentence, which defines eligibility for a Residual Annuity.  *See* Compl. Ex. 3 (Dkt. 21-3) at 3, ¶ 5.

Based on information provided by Defendants in discovery thus far, including the production of a spreadsheet containing data and actuarial calculations on April 13, 2017, Plaintiffs currently estimate the proposed class to consist of approximately 1,200 persons, *see* Gottesdiener Decl. ¶ 2, who were either:  (1) like Ms. McCutcheon, denied any Residual Annuity in 2014 when Defendants finally got around to retroactively implementing the RAA; or (2) like Mr. Caufield, received something that Defendants called a "Residual Annuity" but which Plaintiffs allege Defendants miscalculated (in each of the four ways discussed above).[8]

As it happens, because Ms. McCutcheon was Mr. Caufield's spouse at the time Mr. Caufield received a lump sum (1999), Ms. McCutcheon actually falls within both of these two categories.  She is a category (1) participant because Defendants denied Ms. McCutcheon in her capacity as a former Colgate employee and Plan participant any Residual Annuity at all— according to her, because Defendants committed the referenced four errors, any one of which, if corrected, would yield her a Residual Annuity.  *See* Compl. ¶ 32.  But Ms. McCutcheon also is a participant under category (2) because she has an independent right as Mr. Caufield's beneficiary to have her Residual Annuity *survivor*'s benefit increased, which she can only accomplish by first having his Residual Annuity increased.

---

[8] As Plaintiffs have previously noted, *see* Pls. 10/13/16 Mtn. to Dismiss Opp. (Dkt. 32) at 6 n.6, the Complaint inadvertently stated an estimated class size of "more than 2,000" individuals, *see* Compl. ¶ 2, where it should have instead read "approximately 1,500."

**ARGUMENT**

Certification of a class is required where the party seeking certification demonstrates that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied.  Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  A district court does not have discretion to deny certification of the class if the elements of Rule 23 are satisfied.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria [of Rule 23] to pursue his claim as a class action").

Analysis of whether a class can be certified may "entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  But "[m]erits questions may be considered to the extent--but only to the extent--that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013).

The Second Circuit has directed courts to give a "liberal rather than restrictive construction" when interpreting Rule 23.  *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 345 (S.D.N.Y. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997)).  Moreover, the Court of Appeals reviews a decision to deny certification far more strictly than a decision to grant certification.  *In re Salomon Analyst Metromedia Lit.*, 544 F.3d 474, 480 (2d Cir. 2008); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) ("if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require").

Courts have long recognized that "ERISA cases are well-suited for class action certification pursuant to Rule 23." *Thompson v. Linvatec Corp.*, 2007 WL 1526418, at *5 (N.D.N.Y. May 22, 2007) (certifying class for benefits claim).  This case is no different.

**I.     The Proposed Class and Its Claims Should Be Certified and Ms. McCutcheon Appointed to Represent the Class**

To maintain a class action, Plaintiffs must satisfy the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and demonstrate that the case is "maintainable" under any one of the three prongs of Rule 23(b):  Rule 23(b)(1) ((A) or (B)), (b)(2) or (b)(3).  *See* Fed. R. Civ. P. 23.

As shown below, all of the requirements of Rule 23(a) are met here, and this case may be maintained under any of the three subsections of Rule 23(b).  Certifying the case under Rule 23(b)(1) and/or (b)(2) is preferable to (b)(3) because cases certified under (b)(1) or (b)(2) do not generally permit opt-outs and consequently have superior *res judicata* effects.  *See*, *e.g.*, *Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303, 309 (D. Conn. 2004).  Therefore, Plaintiffs request that the case be certified under Rule 23(b)(1) and/or (b)(2), and only alternatively, if the Court deems it necessary, in whole or in part, under Rule 23(b)(3).

**A.     The Proposed Class and Claims Satisfy the Requirements of Rule 23(a)**

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all class members if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  All of these requirements are met in this case.[9]

### 1.    The Class Is So Numerous that Joinder Would Be Impracticable

The first Rule 23(a) factor ("numerosity") requires the court to find that the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The exact number of class members need not be known before the proposed class will be found sufficiently numerous to make joinder impracticable.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Moreover, "impracticable" means "difficult or inconvenient;" it does not mean impossible.  *Id.* at 936.  While there is no talismanic number required to satisfy numerosity, proof that a class consists of around 40 or more members is considered sufficient.  *See*, *e.g.*, *Novella v. Westchester Cty.*, 661 F.3d 128, 144 (2d Cir. 2011).

Here, numerosity is readily established because the proposed class is comprised of approximately 1,200 persons.  *See* Gottesdiener Decl. ¶ 2.

### 2.    The Claims Present Common Questions of Law or Fact

The second Rule 23(a) factor ("commonality") requires that there be either questions of law or fact common to the class.  The question is whether there is a "unifying thread" among the claims to warrant class certification.  *Indergit v. Rite Aid Corp.*, 2013 WL 5380253, at *14-15 (S.D.N.Y. Sept. 26, 2013).  "Even a single question of law or fact will suffice to satisfy the commonality requirement."  *In re Puda Coal Securities Inc., Litig.*, 2013 WL 5493007, at *17 (S.D.N.Y. Oct. 1, 2013).

There are four common questions here:

---

[9] Although not expressly stated in the Rule, the courts have created two additional requirements:  first, that an identifiable class exists from the outset of litigation, and second, that the representative plaintiff be a member of that class.  *See Norman v. Conn. State Bd. of Parole*, 458 F.2d 497, 499 (2d Cir. 1972).  These two additional requirements are easily satisfied here:  the proposed class has been identified with clarity and specificity, and Ms. McCutcheon is a member of the proposed class.

(1)      Did Defendants miscalculate participants' Appendix benefits by improperly ignoring PRA annuity or illegally reducing it by not calculating them using the Plan § 1.3 Actuarial Equivalent factors in effect at the time the participant terminated employment, as required by the terms of the Plan and the law?

(2)      Did Defendants miscalculate participants' Appendix benefits by improperly calculating their pre-1989 formula annuity due to a miscalculation of their PIA offset?

(3)      Did Defendants miscalculate participants' Appendix benefits and other parts of the Residual Annuity benefit by improperly applying a mortality discount?

(4)      Did Defendants miscalculate participants' Appendix benefits by improperly applying an offset or by applying the wrong offset based on the *Colgate I* settlement?

These common issues are more than sufficient to satisfy the commonality requirement. *See*, *e.g.*, *Colgate I*, Dkt. 162, Final Order and Judgment at 2 (certifying the proposed classes, finding commonality satisfied); *Esden v. Ret. Plan of the First Nat'l Bank of Boston*, 182 F.R.D. 432, 441 (D. Vt. 1998), *aff'd*, 229 F.2d 154 (2d Cir. 2000).

### 3.      Ms. McCutcheon's Claims Are Typical of the Claims of the Proposed Class

The third Rule 23(a)(3) factor ("typicality") requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) requires that the class representatives have claims typical of those shared by the class members.  To establish typicality under Rule 23(a)(3), the party seeking certification must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux*, 987 F.2d at 936.  "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability."  *In*

*re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  When the same unlawful conduct was directed at or affected both the proposed class representative and the prospective class, typicality is usually met.  *See Robidoux*, 987 F.2d at 936-37; *see also Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (the typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").

That is the case here.  Defendants unlawfully calculated all proposed class members' benefits in the same way.  Ms. McCutcheon does not assert any claim for benefits in addition to or different than those of any member of the proposed class.  Her claims and their claims are identical, and are hence "typical" for purposes of Rule 23(a)(3).

### 4.    Ms. McCutcheon and Undersigned Counsel Will Fairly and Adequately Protect the Interests of the Class

The final Rule 23(a) factor ("adequacy") requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Generally, adequacy of representation entails inquiry as to whether:  (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted).

These tests are easily met here.  Ms. McCutcheon's interests and those of the proposed class members are perfectly aligned:  they all want their Residual Annuities to be properly calculated.  Those benefits would only increase if the errors Ms. McCutcheon alleges are corrected.  As for Plaintiffs' attorneys, undersigned counsel is sufficiently qualified, experienced, and able to represent the proposed class, as discussed below in the context of Rule 23(g).  *See* Gottesdiener Decl. ¶ 3.

13

**B.      The Proposed Class Satisfies Rule 23(b)(1)(A), (b)(1)(B) and/or (b)(2)**

A proposed class that meets the four requirements of Rule 23(a) should be approved if it complies with any of the three provisions of Rule 23(b).  The proposed class here can and should be certified under Rule 23(b)(1)(A), (b)(1)(B), and/or (b)(2).

**1.      The Requirements of Rule 23(b)(1)(A) and/or (b)(1)(B) Are Met**

Under Rule 23(b)(1), a class action may be maintained if prosecuting separate actions by or against individual class members would create a risk of:

(A)      inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)      adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1).  "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.).  "Most ERISA class action cases are certified under Rule 23(b)(1)."  *Id.*  In the instant case, both prongs of Rule 23(b)(1) are satisfied.

**a.      Risk of Incompatible Standards of Conduct**

"ERISA cases where plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A)."  *Savani v. Washington Safety Management Solutions, LLC*, 2012 WL 3757239, at *4 (D.S.C. Aug. 28, 2012).  Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against down river owners)."  *Amchem*, 521 U.S. at 614 (citation omitted).  *Accord Dukes*, 131 S. Ct. at 2558 n.11 (quoting *Amchem*).

14

It is precisely for this reason that "[p]erhaps unique to ERISA class actions," the requirements of Rule 23(b)(A)(1) are more often met in ERISA than in any other kind of case – because "[u]nder ERISA, the plan and its fiduciaries generally owe the same duty to all participants, and a violation of ERISA with respect to one may establish a violation with respect to all other similarly situated participants."  Gary L. Sasso, *Defense of Federal Class Actions*, 710 PLI/Lit 149, \*250 (July 2004).  *Accord Richards v. FleetBoston Financial Corp.*, 2006 WL 2979373, at \*8-9 (D. Conn. Oct. 16, 2006) (statutory obligation to treat all class members alike in an ERISA plan and the number of affected class members made challenge to the legality of a pension plan formula "well-suited" to treatment under Rule 23(b)(1)(A); "inconsistent rulings on these claims by different courts could create an untenable situation"); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179-80 (S.D.N.Y. 2006) ("The language of subdivision (b)(1)(A), addressing the risk of "inconsistent adjudications," speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike'").

Thus, Rule 23(b)(1)(A) applies here because both under the law and the terms of the Plan, Defendants were and are required to uniformly and consistently administer, interpret, and apply the Plan to similarly situated participants.  *See* Compl. Ex. 9A (Dkt. 21-9), 1994 Plan § 8.5, at 41 ("All rules and decisions of the Employee Relations Committee shall be uniformly and consistently applied to all Members in similar Circumstances").  Therefore, if two courts were to come to different conclusions about how participants' benefits must be calculated under the RAA, Defendants would be bound by conflicting edicts, making it impossible for them to implement any one course of action.  *See Esden*, 182 F.R.D. at 441 (certifying whipsaw case on that basis); *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying

claim for pension benefits, because "different courts [could] reach[] conflicting decisions

regarding not only the Plan's interpretation but also the applicability of the various defenses the

defendants seek to impose").[10]

### b.    Risk of Adjudications That, As a Practical Matter, Would Be Dispositive as to Others

Certification under Rule 23(b)(1)(B) is also appropriate here because multiple lawsuits

would create the risk that the judgment with respect to some members of the proposed class

would, "as a practical matter, [] be dispositive of the interests of the other members . . . or

substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P.

23(b)(1)(B).  One "classic example" cited by the Supreme Court in *Ortiz v. Fibreboard Corp.*,

527 U.S. 815 (1999), is "the adjudication of the rights of all participants in a fund in which the

participants had common rights."  *Id.* at 836 n.14.  But Rule 23(b)(1)(B) applies where "*any*

individual adjudication by a class member disposes of, or substantially affects, the interests of

absent class members."  *Id.* at 834 (emphasis added); 5 James W. Moore et al., *Moore's Federal*

*Practice* § 23.42[3][c] (3d ed. 2010).  In other words, "[f]or a suit to qualify as a class action

under this subdivision, it is not necessary for the nonclass judgment to be technically dispositive

of the interests of the other members of the putative class, but it must as a practical matter

---

[10] *Accord Cottillion v. United Refining Co.*, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013) (certifying class under Rule 23(b)(1)(A) in defined benefit plan underpayment case because "if relief were granted in favor of some terminated vested participants and not others, the Plan would be faced with the impossible task of distributing benefits to similarly situated plan participants pursuant to two conflicting standards"); *Mezyk v. U.S. Bank Pension Plan*, 2011 WL 601653, at *9 (S.D. Ill. Feb. 11, 2011) ("defendants would likely be faced with the impossible task of administering the Plan and distributing benefits under the Plan using multiple, inconsistent standards.  Thus, class certification is appropriate for all counts under Rule 23(b)(1)(A) to establish one single standard of conduct for the defendants' administration of the Plan"); *Pender*, 269 F.R.D. at 598-99 (same, due to "risk that putative class members would seek relief in other courts, leading to conflicting interpretations of the Plan and conflicting remedies"); *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (defined benefit plan case, certifying class under Rule 23(b)(1)(A) because "different adjudicative bodies could reach different conclusions" as to class members' entitlement to recalculated accelerated transition benefits); *Lyell v. Farmers Grp. Inc. Employees' Pens. Plan*, 2008 WL 5111113, at *4 (D. Ariz. Dec. 3, 2008) (same, "otherwise, different courts might require different things of the Farmers Plan").

conclude the interests of those members." *Larionoff v. United States*, 533 F.2d 1167, 1181 n.36 (D.C. Cir. 1976) (*citing* Wright & Miller, *Federal Practice & Procedure*; citation omitted).[11]

As a result, courts often find that Rule 23(b)(1)(B) is met in cases involving ERISA claims for benefits. *See, e.g.*, *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (reversing district court and certifying class under Rule 23(b)(1)(B) in case challenging employer's method of estimating participants' social security offsets in ERISA defined benefit plan); *In re J.P. Morgan Cash Balance Litig.*, 242 F.R.D. 265, 276 (S.D.N.Y. 2007) (cash balance plan case certified under Rule 23(b)(1)(B)); *Savani*, 2012 WL 3757239, at *4 (certifying under Rule 23(b)(1)(B) because the resolution of plaintiff's claims "as a practical matter, would be dispositive of the interests of the other class members" and, absent certification, "would substantially impair the class members' ability to protect their interests").

Here, if this case is not certified as a class action, its result as to the proper determination of benefits under the RAA would most certainly have the practical effect of conclusively determining the outcome of other such actions, making certification under Rule 23(b)(1)(B) appropriate. *See, e.g.*, *Sessions v. Owens-Ill., Inc.*, 267 F.R.D. 171, 179 (M.D. Pa. 2010) (ERISA action alleging improper denial of enhanced retirement benefits; finding Rule 23(b)(1)(B) certification appropriate because "plaintiffs would all advocate the same legal theory, with claims arising from the same events and the same course of conduct. Adjudication of their claims would require a court to evaluate defendants' conduct, which was uniform with respect to each plaintiff, and to interpret certain provisions of the plan in which all plaintiffs participated.

---

[11] *See also* Advisory Committee Notes to the 1966 Amendments to Rule 23, 39 F.R.D. 69, 100-01 (1966) (rule applies to "situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter").

Accordingly, there is a very real danger that an adjudication in which one plaintiff participated would affect other plaintiffs' ability to protect their own interests").[12]

### 2.      The Requirements of Rule 23(b)(2) Are Met

The proposed class claims also qualify for certification under Rule 23(b)(2).  "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'"  *Amchem*, 521 U.S. at 614 (*quoting* Rule 23(b)(2)).

This case easily satisfies the Rule 23(b)(2) standard.  Here, there is no question but that Defendants have "acted . . . on grounds that apply generally to the class, so that . . . declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs allege that when Defendants finally implemented the RAA, they committed four across-the-board errors in the way they performed those calculations for all participants in the class, as discussed above.  The final relief Plaintiffs seek is an order under ERISA § 502(a)(1)(B) declaring that Defendants miscalculated participants' benefits in each of the four ways described and that participants are entitled to Residual Annuities calculated as set forth in the Complaint.

Such a declaration would resolve the class's claims with a single order.  Because ERISA plan administrators are fiduciaries who are required to pay all benefits that participants are entitled under a plan, Defendants presumably would reprogram their calculations to reflect and distribute the unpaid benefits to which participants remain entitled under the Plan.  Only in the unlikely event that Defendants were to refuse to comply with their ERISA duties would the class

---

[12] Among the many other pension benefit cases certified under Rule 23(b)(1)(B) are:  *Pender*, 269 F.R.D. at 598-99; *Patrick v. AK Steel Corp.*, 2008 WL 4758673, at *5 (S.D. Ohio. Oct. 27, 2008); *Walker v. Monsanto*, 04-cv-436-JPG-PMF, Doc. 276 at 6 (S.D. Ill. May 22, 2008); *In re Amsted Indus., Inc. ERISA Litig.*, 2002 WL 31818964, at *8 (N.D. Ill. Dec. 16, 2002); *Helms v. Local 705 Int'l Bhd. of Teamst. Pens. Plan*, 1998 WL 182513, at *2 (N.D. Ill. Apr. 16, 1998); *Schutte v. Maleski*, 1993 WL 218898, at *9 (E.D. Pa. June 18, 1993); and *Church v. Consolidated Frgt'ways*, 1991 WL 284083, at *14 (N.D. Cal. 1991).

be required to petition the Court to direct Defendants to recalculate benefits in a manner
consistent with the declaration.  But even then, such a directive—*e.g.*, that "the Court hereby
orders Defendants to apply the benefit formula the Court has declared governs the calculation of
participant's benefits"—would still apply to the class as a whole, satisfying Rule 23(b)(2)'s
strictures.  *Dukes*, 131 S. Ct. at 2557 ("Rule 23(b)(2) applies only when a single injunction or
declaratory judgment would provide relief to each member of the class").

     This case thus does not present the kind of obstacles to Rule 23(b)(2) certification that
exist in other kinds of cases, such as in *Dukes*, 131 S. Ct. at 2557-58, which did not satisfy Rule
23(b)(2) because the class there sought "individualized award[s]" of money "damages."  *See also*
*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) (applying *Dukes* and
explaining that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief
relates exclusively or predominantly to money damages").  Here, the proposed class does not
seek individual "damages" for a tort or discrimination:  it seeks clarification of what the RAA's
benefit formula actually *says* when read in light of ERISA.  As the Sixth Circuit recently
explained, "[o]f course, Rule 23(b)(2) certification remains available in other circumstances,
including when the plaintiffs seek a declaration about the meaning of a contract," *Gooch v. Life*
*Investors Ins. Co. of Am.*, 672 F.3d 402, 427 (6th Cir. 2012).  That is exactly what the proposed
class seeks here.

     The benefits Plaintiffs ultimately hope to receive following a favorable ruling in this case
are clearly not monetary "damages" of the type proscribed by the Supreme Court in *Dukes*.
There, Wal-Mart would have been entitled to present a "mixed motive" defense to each claim of
discriminatory behavior and individual investigations and hearings would be required.  *Dukes*,
131 S. Ct. at 2560-61.  By contrast, here, Defendants acted uniformly with respect to the

proposed class and benefits would be calculated formulaically.  The different amounts due to

each participant will be determined solely by reference to standardized actuarial computations

based on a common methodology applied to the same undisputed, objective data that the Plan

has always used to calculate benefits.  As a result, benefits would flow directly from the claims

forming the basis of the declaratory relief sought and is therefore incidental to it and allowed

under Rule 23(b)(2).  *See Allison v. Citgo Petroleum*, 151 F.3d 402, 415 (5th. Cir. 1998);

*Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir.

2012) (Posner, J.) (ERISA pension benefits case, finding "*Wal-Mart* left intact the authority to

provide purely incidental monetary relief in a (b)(2) class action").

In other words, any money that ultimately flows to participants in the form of increased

retirement benefits would follow "mechanically" from the Plan administrator's application of the

formula that the Court declares is compliant with the Residual Annuity Amendment and the

statute.  *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 764 (7th Cir. 2003)

(holding Rule 23(b)(2) certification of pension benefits case proper for that reason).

Accordingly, both before and after *Dukes*, numerous courts have correctly approved the

certification of classes under Rule 23(b)(2) in suits by pension plan participants seeking

declaratory relief, even where the class also explicitly asked the court for follow-on relief

ordering the defendant plan to recalculate and pay benefits consistent with the formula specified

by the court.  *See*, *e.g.*, *Johnson*, 702 F.3d at 371 (affirming certification under Rule 23(b)(2) in

pension miscalculation case because "the award of monetary relief will just be a matter of laying

each class member's pension-related employment records alongside the text of the reformed plan

and computing the employee's entitlement by subtracting the benefit already credited it to him

from the benefit to which the reformed plan document entitles him, the monetary relief will truly

be merely 'incidental' to the declaratory and (if necessary) injunctive relief (necessary only if Meriter ignores the declaration)"); *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 263 (D. Conn. 2012) (cash balance plan case; denying post-*Dukes* motion to decertify Rule 23(b)(2) class because any "monetary recovery [would be] wholly incidental to the relief" requested), *aff'd*, 775 F.3d 510 (2d Cir. 2014); *LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456 (N.D.N.Y. 2003) (certifying class under Rule 23(b)(2) because any monetary relief from recalculation of pension benefits based on reformed plan would be incidental to primary relief declaring that the plan violated ERISA); *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 2012 WL 2930205, at *6 (W.D. Wis. July 2, 2012) (pension benefits case; re-certifying Rule 23(b)(2) class because *Dukes* "did not foreclose [incidental monetary] relief" and "certification under Rule 23(b)(2) remains appropriate"), *aff'd in relevant part*, 726 F.3d 936 (7th Cir. 2013).

###    C.    The Requirements of Rule 23(b)(3) Are Also Met

If necessary, the proposed class also qualifies for certification under Rule 23(b)(3).  Rule 23(b)(3) "requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (*quoting* Rule 23(b)(3)).  The "predominance requirement tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008).  It "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards &*

*Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (ellipsis in original; *quoting Amchem*, 521 U.S. at 615). "Therefore the requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers*, 624 F.3d at 547 (*quoting Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

As the foregoing discussion clearly indicates, predominance is established because, as noted, the claims in this case do not present any issues that are individual to class members once liability is established and relief ordered. Resolution of *all* of the legal and factual questions in this case can be achieved through generalized proof. There are no individualized issues.

Moreover, superiority in proceeding as a class action is also established here based upon a review of the remaining criteria of Rule 23(b)(3). Specifically, (A) the amount of benefits still owed to each participant is generally not large enough to warrant individual litigation and individuals are unlikely to want to pursue individual cases; (B) to Plaintiffs' knowledge, there is no other action pending which presents these claims; (C) this district is the most desirable forum for the litigation, as evidenced by, among other things, the fact that the *Colgate I* litigation was transferred here; and (D) there are no difficulties likely to be encountered in managing this case in the form of a class action. *See* Fed. R. Civ. P. 23(b)(3).

Accordingly, certification is undoubtedly proper under Rule 23(b)(3) in the event that the Court determines that certification is inappropriate under Rule 23(b)(1) and (b)(2).

### D.      Undersigned Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Plaintiffs respectfully submit that Mr. Gottesdiener is qualified to be appointed as Class Counsel pursuant to Rule 23(g). Under Rule 23(c)(1)(B) and Rule 23(g), a court certifying a

class must appoint class counsel based on a consideration of a variety of common sense factors. Fed. R. Civ. P. 23(c)(1)(B), 23(g).

The Court should find that Plaintiffs' counsel has considerable experience in both ERISA and class actions, *see* Gottesdiener Decl. ¶ 3; is qualified to represent the proposed class; and can be expected to perform his responsibilities adequately in light of that experience, the record to date in this case, and related considerations.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, such other reasons as may appear to the Court and that Plaintiffs have adduced or may elsewhere adduce, Plaintiffs respectfully request that the instant motion be granted.

Dated:  May 26, 2017                              Respectfully submitted,


    s/Eli Gottesdiener
Eli Gottesdiener
Steven D. Cohen
Albert Huang
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Telephone:   (718) 788-1500
Telecopier:   (718) 788-1650
Email:        eli@gottesdienerlaw.com

*Attorneys for Plaintiffs and the proposed Class*