## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **PAUL CAUFIELD,** *et al.* | **NO. 16-CV-4170 (LGS)** |
| **v.** | |
| **COLGATE-PALMOLIVE CO.,** *et al.* | |
| | **Judge Lorna G. Schofield** |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    RELEVANT FACTUAL BACKGROUND.................................................... 4

     A.    Overview of Colgate-Palmolive and the Colgate-Palmolive Company Employees' Retirement Income Plan.............................................. 4

     B.    Ms. McCutcheon Received Her Lump Sum Benefit from the Plan in 1994 ........ 4

     C.    The Residual Annuity Amendment's Enactment .................................... 5

     D.    The Payment of Residual Annuities ....................................................... 6

     E.    Ms. McCutcheon Files An Administrative Claim Seeking a Residual Annuity ................................................................................ 8

III.   ARGUMENT................................................................................................ 10

     A.    Ms. McCutcheon Cannot Satisfy the Typicality Requirement of Rule 23(a)(3) .................................................................................... 11

          1.    Ms. McCutcheon Admitted the Committee Correctly Interpreted the RAA With Respect to Error 1, Which Renders Her Atypical of the Class She Seeks To Represent ........................................... 11

          2.    Ms. McCutcheon Focuses on a Claim Unavailable to Participants Eligible for Benefits Under Appendix B ................................. 14

          3.    A Unique Statute of Limitations Exists to Bar Ms. McCutcheon's Claim for Benefits .................................................................... 15

     B.    Ms. McCutcheon Is Not An Adequate Class Representative under Rule 23(a)(4) .................................................................................... 18

     C.    Ms. McCutcheon Has No Cause of Action for Benefits Under Appendix D and Cannot Serve as a Class Representative for Those Participants .................. 21

     D.    The Proposed Class Cannot Be Certified under Rule 23(b) ............................... 22

IV.   CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abena v. Metropolitan Life Ins. Co.*,
   544 F.3d 880 (7th Cir. 2008) .................................................................17

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016)..................................................................22

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................10, 11, 25

*Arabian v. Sony Elecs., Inc.*,
   No. 05-CV-1741WQHNLS, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007).............................1

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...........................................................................23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)...............................................................13, 20

*Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank
   of N.Y. Mellon Corp.*,
   287 F.R.D. 216 (S.D.N.Y. 2012) ...........................................................22

*Beck v. Status Game Corp.*,
   No. 89-CIV-2923, 1995 WL 422067 (S.D.N.Y. July 14, 1995).............................18

*Blum v. Yaretsky*,
   457 U.S. 991 (1982).........................................................................22

*Caridad v. Metro–North Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999)................................................................14

*Claeys v. Aetna Life Ins. Co.*,
   No. 1:10-CV-105, 2013 WL 12126005 (W.D. Mich. Feb. 27, 2013),
   *aff'd*, 548 F. App'x 344 (6th Cir. 2013)..................................................17

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).....................................................................25

*Cromer Finance Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) ...........................................................15

*Darvin v. Int'l Harvester Co.*,
   610 F. Supp. 255 (S.D.N.Y. 1985) .........................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dye v. Associates First Capital Corp. Long-Term Disability Plan*,
    243 F. App'x 808 (5th Cir. 2007) ...........................................................17

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
    903 F.2d 176 (2d Cir. 1990)...................................................................15

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982).........................................................................10, 22

*Guo v. IBM 401(k) Plus Plan*,
    95 F. Supp. 3d 512 (S.D.N.Y. 2015).......................................................17

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012)..............................................................23, 24

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    134 S.Ct. 604 (2013)..............................................................................17

*In re Citigroup ERISA Litig.*,
    104 F. Supp. 3d 599 (S.D.N.Y. 2015).....................................................22

*In re Direxion Shares ETF Trust*,
    279 F.R.D. 221 (S.D.N.Y. 2012) ............................................................22

*In re Independent Energy Holding PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ............................................................18

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) .......................................................18, 20

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    199 F.R.D. 119 (S.D.N.Y. 2001) ..............................................................1

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009)....................................................................11

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983)..............................................................13, 18

*Latino Officers Ass'n v. City of New York*,
    209 F.R.D. 79 (S.D.N.Y. 2002) ..............................................................14

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
    221 F.3d 1235 (11th Cir. 2000) ..............................................................15

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d Cir. 2005)...........................................................................21

*Novella v. Westchester County*,
  661 F.3d 128 (2d Cir. 2011).........................................................................16

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)......................................................................................23

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)......................................................................................23

*Scott v. N.Y.C. Dist. Council Carpenters Pension Plan*,
  224 F.R.D. 353 (S.D.N.Y. 2004) ......................................................18, 19, 20

*Sheckly v. Lincoln Nat'l Corp. Employees Ret. Plan*,
  366 F. Supp. 2d 140 (D. Me. 2005) ..............................................................17

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................................25

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ..................................................................16

*Ticor Title Ins. Co. v. Brown*,
  511 U.S. 117 (1994)......................................................................................23

*Tuminello v. Aetna Life Ins. Co.*,
  No. 13 CIV. 938 KBF, 2014 WL 572367 (S.D.N.Y. Feb. 14, 2014) ...........17

*Vengurlekar v. Silverline Technologies Ltd.*,
  220 F.R.D. 222 (S.D.N.Y. 2003) ..................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................10, 11, 23, 24

*Weikel v. Tower Semiconductor Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998).........................................................................1

*White v. Worthington Industries, Inc. Long Term Disability Income Plan*,
  266 F.R.D. 178 (S.D. Ohio 2010) .................................................................17

## STATUTES

29 U.S.C. § 1132(a) ..................................................................................21, 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................. passim

Fed. R. Civ. P. 30(c)(2) ........................................................................................................13

## I. __INTRODUCTION__

Plaintiff Rebecca McCutcheon ("Plaintiff" or "Ms. McCutcheon") is the sole class

representative proposed in Plaintiffs' Motion for Class Certification and Appointment of Class

Counsel ("Class Motion").[1]  She seeks to represent:

> Any person who, under any of Appendices B, C or D of the Colgate-
> Palmolive Company Employees' Retirement Income Plan ("Plan"), is
> entitled to a greater benefit than his Accrued Benefit as defined in Plan §
> 1.2, provided such person receives a lump sum payment from the Plan,
> and the beneficiaries and estates of such Participants.

Class Motion at 1.  To be able to represent the proposed class, Ms. McCutcheon must offer

evidence demonstrating that each of the requirements of Federal Rule of Civil Procedure 23 are

met.  She has failed to do so.

As an initial matter, Ms. McCutcheon is atypical of the class she seeks to represent.  Her

deposition testimony directly contradicts the central allegation being made in the Complaint.

The Complaint generally alleges that Ms. McCutcheon is entitled to benefits under the Residual

Annuity Amendment (the "RAA") to the Plan, but specifically, alleged "Error 1" is the claim

that is driving this litigation.[2]  The Plan committee tasked with interpreting the RAA, the

Employee Relations Committee ("Committee"), reasonably interpreted it to mean that if a

---

[1]      Ms. McCutcheon and her former husband Paul Caufield (collectively, "Plaintiffs") jointly
filed this suit. Dkt. 1.  Plaintiffs, however, withdrew Mr. Caufield as a class representative,
most likely because they recognize that he could not serve in that role.  Mr. Caufield refused to
travel to New York for a deposition.  Accordingly, even if he were being offered as a class
representative, the law is clear he would be ineligible to do so.  *See, e.g.*, *In re Oxford Health
Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001) (finding class representative
adequate, in part, because of willingness to attend trial); *Arabian v. Sony Elecs., Inc.*, No. 05-
CV-1741WQHNLS, 2007 WL 627977, at *7 (S.D. Cal. Feb. 22, 2007) (citing *Welling v. Alexy*,
155 F.R.D. 654, 659 (N.D. Cal. 1994)) (finding a proposed representative inadequate because he
could not attend trial, and thus could not "serve the necessary role of 'check[ing] the otherwise
unfettered discretion of counsel in prosecuting the suit.'"); *Weikel v. Tower Semiconductor Ltd.*,
183 F.R.D. 377, 396 (D.N.J. 1998) (finding, *inter alia*, one proposed class representative
inadequate where he would be unable to attend trial).

[2]      Plaintiffs argued in the Civil Case Management Plan that "monetarily, the amounts at
stake as a result of Errors 2, 3, and 4 pale in comparison to Error 1." Dkt. 50-1 at p. 6.

participant in the Plan selects a lump sum, the RAA ensures that a participant does not forfeit benefits she accrued through participation in the final average pay plan that existed prior to 1989 ("Grandfathered Plan"), an interpretation that the Complaint calls a "crassly manipulative, inherently implausible, and unlawful interpretation."  Compl.  ¶ 4.  The Complaint alleges that the RAA created a "new, additional Personal Retirement Account" annuity that is not tied to benefits accrued under the Grandfathered Plan.  Dkt. 45 at 2.  Ms. McCutcheon, however, testified at her deposition that the Committee's interpretation of the RAA was correct, which places her squarely at odds with the central theory being espoused in the Complaint.  Ms. McCutcheon's admission dooms her individual claim for benefits under "Count II, Error 1," but more pertinent to the instant motion, it also defeats her ability to represent the class.

Ms. McCutcheon is atypical for another reason.  She seeks to represent Appendix B participants even though she was an Appendix C participant.  This matters because if Ms. McCutcheon prevails on "Error 1," she cannot recover alleged damages relating to the second alleged error she identified, "Error 2."  As explained below, Appendix B participants do not have a claim for damages under Error 1 and would not benefit if Ms. McCutcheon were successful on her argument regarding Error 1.  Thus, if Ms. McCutcheon prevails on proving Error 1, she would have no incentive to pursue Error 2 damages for Appendix B participants.  That makes her unable to meet the typicality prong as to those class members.

Further, a unique defense exists to Ms. McCutcheon's claims, which courts routinely hold prevents a finding of typicality.  Here, Ms. McCutcheon failed to bring suit to challenge the Committee's denial of her claim within the contractual limitations period prescribed by the Plan. The Plan requires participants to notify the Plan they intend to file a lawsuit within 90 days after mailing or delivery of the Committee's denial of their claims and actually file a lawsuit within

180 days.  Ms. McCutcheon did neither.  Accordingly, Defendants will likely prevail on the defense that Ms. McCutcheon's claim is time-barred by the Plan's limitations period.

In addition to being unable to prove that her claims and defenses are typical of the class she seeks to represent, Ms. McCutcheon also cannot show she is an adequate class representative.  Ms. McCutcheon does not know what claims have been filed in this lawsuit nor most of the facts underlying her claims.  As Ms. McCutcheon's deposition establishes, she will simply defer to her lawyer on any and all issues.  She has also failed to review key documents such as the Complaint and the administrative appeal prior to them being filed or served.  All of this renders her an inadequate class representative.

Ms. McCutcheon also does not have standing to assert claims for participants who are entitled to benefits under Appendix D.  Ms. McCutcheon is not entitled to benefits under Appendix D.  She is an Appendix C participant.  Under Section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA"), participants can only sue to obtain benefits due to them under the Plan.  Thus, because Ms. McCutcheon is not and never will be eligible for benefits under Appendix D, she cannot seek relief on behalf of individuals who are.

Lastly, Ms. McCutcheon seeks to certify a class under Rules 23(b)(1), 23(b)(2), and 23(b)(3).  Given that the Complaint is seeking monetary benefits and nothing more, the Court cannot certify a class under Rules 23(b)(1) or 23(b)(2), which do not provide notice and opt-out rights to class members.  Further, given the standing issues and differing motivations to pursue the different "Errors" that have been alleged, the class is not "sufficiently cohesive" to be certified under Rule 23(b)(3).

A plaintiff must establish ***all*** the elements of Rule 23 in order for a class to be certified.  Ms. McCutcheon cannot do so.  Accordingly, Plaintiffs' Class Motion should be denied.

3

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Overview of Colgate-Palmolive and the Colgate-Palmolive Company Employees' Retirement Income Plan

Colgate is a leading consumer products company whose products are marketed in more than 200 countries and territories throughout the world.  The Company is headquartered in New York and has other facilities and employees located throughout the country.  Colgate sponsors the Plan, which is a defined benefit plan.  Compl. ¶ 36.  The Employee Relations Committee is the Plan Administrator for the Plan.  *Id*. ¶¶ 40-41.  Prior to 1989, the Plan was a final average pay plan ("Grandfathered Plan").  *Id*. ¶ 58.  In its simplest terms, a participant's pre-1989 Plan Grandfathered benefit, paid as an annuity, was generally based upon the participant's final average salary and years of benefit accrual service.  Dkt. 21-36 at 61.

Effective July 1, 1989, the Plan converted to a cash balance plan, which provided participants with a personal retirement account ("PRA") benefit.  *Id.* ¶¶ 58-59.  Thereafter, the Plan defined a participant's promised pension benefit in terms of a stated PRA balance.  At the time of the conversion, the Plan offered participants the right to elect to continue participating in the Grandfathered Plan.  Dkt. 21-5 at 2-3.  If a participant retires from employment with Colgate, either the balance in the participant's PRA or the vested value of the benefit calculated under the Grandfathered Plan's provisions (whichever is larger) would be converted into an annuity for that individual or, if preferred, the participant may elect to receive the PRA balance as a lump sum.  Dkt. 21-38 at 7.

### B.     Ms. McCutcheon Received Her Lump Sum Benefit from the Plan in 1994

Ms. McCutcheon was employed by Colgate or one of its affiliates from 1979 until 1994, and elected to take her pension benefits in the form of a lump sum in 1994.  Compl. ¶ 32; Dkt. 21-6 at 7.  Ms. McCutcheon was eligible to receive benefits under Appendix C of the Plan

4

because she elected to contribute to the Grandfathered Plan in 1989. Dkt. 21-5 at 2-3. McCutcheon's lump sum payment equaled her PRA balance plus the contributions she made to maintain her Grandfathered Plan benefit. Dkt. 21-17 at 5; Dkt. 21-6 at 7.

McCutcheon was not eligible to receive benefits under Appendix D. Appendix D of the 1994 Plan stated:

> A Member affected by this Appendix D is any Member who is a non-bargained Employee and who, as of June 30, 1989,
>
> (a)   was a Member of the Plan for all purposes under Section 2.1(a) (Membership) of the Plan, and
>
> (b)   was a Member the sum of whose age and years of Vesting Service as of July 1, 1989 equals or exceeds 60, and
>
> (c)   was a Member who did not make the election described in Section 2 (If a Member Elects to Make Contributions to Maintain Prior Plan Benefits) of Appendix C (Provisions With Respect to Grandfathered Employees).

Dkt. 21-10 at 23. Ms. McCutcheon did not qualify for benefits under Appendix D, in part, because she elected to make contributions to maintain her benefits under the Grandfathered Plan and because the sum of her age and years of Vesting Service did not exceed 60. Dkt. 21-5 at 3.

### C.   The Residual Annuity Amendment's Enactment

In 2005, the Committee adopted the Residual Annuity Amendment (the "RAA"). Compl. ¶ 68. It did so because it recognized that when the cash balance plan was established in 1989, certain benefits that accrued under the Grandfathered Plan may not have been properly preserved when participants elected to receive their PRA benefit as a lump sum payment under the cash balance plan. *Id.* ¶ 71. Specifically, the benefit of some of the Plan participants who elected to receive their benefits in the form of a lump sum after the cash balance plan was adopted was less than the present value of the benefit they had previously accrued under the Grandfathered Plan. This decrease in the value of the accrued benefit for some of the participants amounted to an

5

impermissible forfeiture of benefits under ERISA.  In order to bring the Plan into compliance

with the law, Colgate adopted the RAA in 2005, which provided for the retroactive payment of

"residual annuities" for certain Plan participants going back to 1989, as well as payment of

residual annuities going forward if the circumstances required it.  Pursuant to the RAA, a

residual annuity is payable only if the present value of the participant's benefit calculated under

the Grandfathered Plan exceeded the value of the participant's PRA benefit paid as a lump sum

under the cash balance plan.  *Id*. ¶ 74.  No residual annuity is payable if there is no forfeiture of

benefit (i.e., the participant's benefit calculated and paid in a lump sum under the cash balance

plan exceeds the value of the participant's benefit calculated under the Grandfathered  Plan).

### D.    The Payment of Residual Annuities

It is not in dispute that after the RAA was adopted in 2005, the Plan failed to pay residual

annuities retroactively.  After the Committee learned that the RAA had not been implemented

retroactively to 1989, the Plan fixed the residual annuity issue in full through a robust and

thoughtful correction process in 2014 that precludes any Plan participant or beneficiary from

trying to claim a portion of those benefits in a future lawsuit.

In 2014, for past residual annuities owed, the Plan made one-time payments with interest

to hundreds of former and current Plan participants or beneficiaries and started to make monthly

residual annuity payments to those same individuals.  Dkt. 21-17.  In general terms, the Plan

calculated whether a participant was entitled to an annuity under the RAA as follows.

- First, the Plan determined the amount of a participant's benefit had he or she continued under the provisions of the Plan in effect prior to the conversion to the cash balance plan, *i.e.* under the "final average pay" formula, and expressed this amount as an annuity (the "Grandfathered Benefit annuity").  Dkt. 21-17 at 5.

- Second, the Plan determined the benefit a participant received as a lump sum.  *Id.*  Under the terms of the Plan, that lump sum payment equaled the Actuarial Equivalent of the

Member's Accrued Benefit plus, if applicable, the amount of his or her Contributions to Maintain Prior Plan benefits with interest.  Dkt. 21-10 at 18.

- Third, the Plan discounted the settlement amount a participant received in *Colgate I* so that it would equal a payment made on the same day the participant received his or her lump sum.  Dkt. 21-17 at 5.

- Fourth, the Plan added that discounted settlement amount to the lump sum the participant received under the Plan.  *Id.*

- Fifth, the Plan converted the total lump sum a participant received, *i.e.* his or her initial lump sum plus the discounted settlement amount, into an annuity (the "PRA Annuity").  *Id.*

- Sixth, the Plan then determined whether the Grandfathered Benefit annuity was greater than the PRA Annuity.  If it was, the Plan made actuarial adjustments and then determined the monthly benefit and retroactive payment to which a participant was entitled.  *Id.*

Under this process, the Plan determined that Ms. McCutcheon was not entitled to a residual annuity because her Grandfathered Plan benefit was less than the value of the PRA benefit she received as a lump sum increased by the value of the settlement she received as part of *Colgate I*.  Because her Grandfathered Plan benefit did not exceed the value of the PRA benefit she actually received, there was no forfeiture of her accrued benefit under the Plan.  Others were entitled to a residual annuity and a one-time payment.  For example, the Plan sent Mr. Caufield a gross payment in the amount of $16,262.54, which represented his residual annuity benefit from the date that his original lump sum was made (1999), accumulated with 5% interest.  Mr. Caufield is also currently receiving a residual annuity of $57.94 per month and will continue to receive that amount on a going forward basis.  Dkt. 21-7.  To make participants whole under the RAA, Colgate paid and will continue to pay affected participants and beneficiaries millions of dollars.

**E.**   **Ms. McCutcheon Files An Administrative Claim Seeking a Residual Annuity**

Ms. McCutcheon submitted a one-page claim for benefits by forwarding a letter dated July 30, 2014 to the Committee.  Dkt. 21-8.  The Committee, acting through its designee, an individual that was delegated to decide claims by the Committee, denied Ms. McCutcheon's claim in a letter dated November 4, 2014.  Dkt. 21-5.  Ms. McCutcheon appealed that decision in a letter dated April 6, 2015.  Dkt. 21-4.

In her appeal, Ms. McCutcheon's counsel identified four alleged "Errors" that the Committee made.  *Id.*  First, Ms. McCutcheon's counsel argued that the RAA created a new PRA Benefit under Appendix C § 2(b)(ii) ("Error 1").  *Id.* at 5-6.  Second, Ms. McCutcheon asserted the Committee miscalculated the annuity available under the Grandfathered Plan, Appendix C § 2(b)(i), because it used the wrong Plan provision to calculate the Estimated Social Security Primary Insurance Amount ("PIA") ("Error 2").  *Id.* at 7.  Third, Ms. McCutcheon argued that the Committee improperly used survivorship in determining the annuity attributable to the lump sum paid to Ms. McCutcheon in 1994.  *Id.* at 7-8.  Ms. McCutcheon also assert that the Committee improperly used a pre-retirement mortality discount ("PRMD") in determining the early retirement factor ("ERF") to apply to the difference between the annuity attributable to the 1994 lump sum and the "greater" annuity payable to Ms. McCutcheon in 1994 under Appendix C.  Plaintiffs identify these two calculations as "Error 3."  *Id.*  Finally, Ms. McCutcheon asserted the Committee improperly applied the settlement of *Colgate I* when calculating participants' residual annuities ("Error 4").  *Id.* at 8.

The Committee affirmed its denial in a letter dated June 4, 2015.  Dkt. 21-7.  Regarding Error 1, the Committee explained to Ms. McCutcheon that the plain language of the Plan and the RAA refuted her interpretation of the terms of the Plan and RAA, which is also not consistent with the intent and purpose of the RAA.  Dkt. 9-10 at 12.  Residual annuities under the RAA

"shall be computed by subtracting the 65 single life annuity Actuarial Equivalent amount of the Member's lump sum payment from the 65 single life annuity benefit otherwise payable to the Member under Appendices B, C, or D, as applicable . . . ."  Dkt. 9-3 at 4.  Appendix C, in turn, states that an employee who elected to make contributions to maintain prior plan benefits and did not receive a lump sum may elect one of two annuities.  Dkt. 9-10 at 18-19.  The first annuity she may elect is "the Actuarial Equivalent of the Member's Accrued Benefit."  *Id.*  In light of the Plan's terms, the "Actuarial Equivalent amount of the Member's lump sum payment" equals the "Actuarial Equivalent of the Member's Accrued Benefit."  The Committee explained this when responding to Ms. McCutcheon's appeal.  Dkt. 9-6 at 11-12.

The Committee also explained its reasoning regarding the other alleged errors.  For example, the Committee explained why it applied the correct Plan provision to determine the PIA when refuting Error 2.  *Id.* at 8-9.  The Committee also explained that Ms. McCutcheon's argument regarding Error 2 results in an irrational and perhaps impermissible benefit design.  The Committee responded to alleged Error 3 by noting that the Plan's definition of Actuarial Equivalence requires it to use survivorship and PRMD.  *Id.* at 12-13.  Regarding alleged Error 4, the Committee noted that the *Colgate I* settlement required the Plan to pay benefits due to certain participants under the then existing terms of the Plan.  *Id.* at 13-14.  As a result, the litigation settlement proceeds, including the attorney's fees paid to Ms. McCutcheon's attorney, were paid from the Plan's assets and became part of the Accrued Benefits – and thus part of the Residual Annuity offset calculation – for the affected participants.  *Id.*

Following the Committee's June 4, 2015 letter affirming its denial of her claim, Ms. McCutcheon did not notify the Committee within 90 days that she intended to file suit nor did she file suit within 180 days, despite the fact that both are required by the terms of the Plan's

9

claims procedure.  Deposition Transcript of Rebecca M. McCutcheon ("McCutcheon Tr.") 44:2-49:7, attached as Exhibit 1 to the Sturgeon Declaration filed herewith.  This lawsuit was filed on June 3, 2016.  Dkt. 1.

## III.   ARGUMENT

Plaintiffs' Motion does not present evidence sufficient to satisfy the required "rigorous analysis" under Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).  "The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citations omitted).  To justify a departure from that rule, a court must find, first, that the action meets all of the prerequisites for class action treatment under Rule 23(a) – numerosity, commonality, typicality and adequacy – and, second, that it is one of the three types of cases for which class action treatment is available under Rule 23(b).  *See* Fed. R. Civ. P. 23.  These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (internal citations and quotation omitted).  In this way, Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," *i.e.* that they are "part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 348 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  In other words, "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350.  Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law

or fact, etc." *Id.* For the reasons set forth below, Ms. McCutcheon cannot meet the requirements of Rule 23.[3]

**A.**    **Ms. McCutcheon Cannot Satisfy the Typicality Requirement of Rule 23(a)(3)**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R .Civ. P. 23(a)(3). All four Rule 23(a) prerequisites for class certification serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20, (1997) (citations and internal quotation marks omitted). Typicality furthers this goal by ensuring that the class representative is sufficiently similar to the rest of the class – in terms of her legal claims, factual circumstances, and stake in the litigation – so that certifying that individual to represent the class will be fair to the rest of the proposed class. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). Here, Ms. McCutcheon's legal claims, stake in the litigation, and defenses to her claims differ significantly from the proposed class.

*1.*    *Ms. McCutcheon Admitted the Committee Correctly Interpreted the RAA With Respect to Error 1, Which Renders Her Atypical of the Class She Seeks To Represent*

As an initial matter, Ms. McCutcheon's testimony directly contradicts the central allegations in the Complaint regarding Error 1, which renders her claims atypical of the class she seeks to represent. In fact, she testified that she agrees with the way in which the Committee

---

[3]    In order for a class to be certified, Ms. McCutcheon must establish all elements of Federal Rule of Civil Procedure 23. This brief focuses on two of those requirements under Rule 23(a), typicality and adequacy, because those are the most glaring reasons Plaintiffs' Class Motion should be denied. Defendants do not address numerosity or commonality because typicality and adequacy alone cripple Ms. McCutcheon's case. Further, Defendants are not waiving their right to later assert that Ms. McCutcheon, or any other proposed class representative, cannot establish numerosity or commonality.

interpreted the RAA.  The Complaint alleges that the Committee committed "Error 1" by ignoring the Plan and RAA's plain language.  Specifically, the Complaint alleges that the RAA created a new PRA-based annuity that is not tied to benefits accrued under the Grandfathered Plan.  Dkt. 45 at 2.

The Committee, however, did not interpret the RAA that way as such an interpretation would run afoul of the plain language of the Plan and make absolutely no sense given the purpose of the RAA.  Colgate, as the Plan sponsor, certainly did not believe that the RAA created a separate "Personal Retirement Account" annuity.  The Committee interpreted the RAA as a measure to ensure a participant in the Plan who elected a lump sum payment did not forfeit benefits she accrued through continued participation in the Grandfathered Plan.  The intent and language of the RAA show that it was to guarantee that those who elected a lump sum payment received all of the benefits to which they were entitled under the Plan's terms.  To ensure no forfeiture occurred, the RAA provides an incremental annuity to certain Grandfathered Plan participants.  Dkt. 21-3 at 4.  Importantly, for purposes of this motion, Ms. McCutcheon testified that she agrees with that interpretation:

> Q.  Oh, that's okay.  Let me start over.  You understand that the Plan adopted an amendment in 2005 calling for certain participants in the Plan to receive a residual annuity?
> A.   Yes.
> Q.   Would you agree with me that the amendment was adopted so that if a participant in the Plan selected a lump sum, that participant may be owed an additional residual annuity to ensure that they didn't forfeit benefits they accrued through their participation in the grandfathered plan?
> A.   Yes.
> Q.  And you would agree with me that the term "residual" is used because some small amount of an annuity is needed to be paid to make sure the lump sum is equal to the money the person accrued under the grandfathered plan?
> A.   Yes.
> Q.  Prior to 1989 the Plan was a final average pay plan?
> A.   Yes.
> Q.   And that's referred to as colloquially the grandfathered plan?

A.    Okay.  Yes.

McCutcheon Tr. 13:24-15:3.[4]  Ms. McCutcheon conceded that an additional, residual annuity is owed to ensure that a participant's lump sum payment was at least equal to the benefits that participant accrued under the Grandfathered Plan.  That directly contradicts the central claim being asserted ("Error 1," Count II) in the Complaint.  Compl. ¶¶ 94-99.

Thus, Ms. McCutcheon cannot represent the proposed class.  She gave "contradictory testimony with regard to basic issues in the case [which] makes [her] claim subject to unique defenses." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000).  While her counsel stressed during the administrative process and in the Complaint that the RAA provides for a separate PRA-based annuity, Ms. McCutcheon admitted just the opposite:  that "the term residual is used because some amount of an annuity is needed to be paid to make sure the lump sum is equal to the money the person accrued under the [G]randfathered [P]lan." McCutcheon Tr. 14:15-15:3.  "This type of inconsistent testimony could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination and unique defenses at trial, to the detriment of the class."  *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985); *see also Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) ("Since plaintiffs' testimony on an issue critical to one of their two causes of action was subject

---

[4]      Following this exchange, counsel for Ms. McCutcheon then lodged several lengthy speaking objections in violation of the Federal Rules.  Rather than objecting "concisely in a nonargumentative and nonsuggestive manner," Fed. R. Civ. P. 30(c)(2), Plaintiffs' counsel coached his client, interrupting the questioning to argue that Defense counsel was "reading from a script really long sentences and asking for basically legal opinion from" the witness.  He also stated "you are not really asking her anything that she knows outside of information that she got from counsel so you are also really seeking the legal advice that I have given her."  McCutcheon Tr. 15:11-16:7.  Ms. McCutcheon abided by her counsel's instructions after the exchange.  She refused to answer most of the questions about her claims throughout the rest of the deposition and simply responded with a version of "[t]hat you would have to discuss with my attorney."  McCutcheon Tr. 35:16-17.  *See also id.* at 26:19-20, 28:7-8, 29:20-21, 29:23-24, 42:14-15, 51:23, 52:5-6, 51:10-12, 52:5-7, 52:15-16, 52:21-22, 53:13-14, 53:20-21, 54:7-8, 61:9-14, 72:9-10, 88:13-14, 89:24-25, 92:21-23, 93:24-25, 94:11.

to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims"). Accordingly, Ms. McCutcheon cannot meet the typicality requirement of Rule 23(a)(3).

> ### 2.  *Ms. McCutcheon Focuses on a Claim Unavailable to Participants Eligible for Benefits Under Appendix B*

Typicality also "requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995)). "The primary criterion for determining typicality is the forthrightness and vigor with which the representative party can be expected to assert the interests of the members of the class." *Latino Officers Ass'n v. City of New York*, 209 F.R.D. 79, 89 (S.D.N.Y. 2002) (internal citation and quotation marks omitted). Here, Ms. McCutcheon's Complaint focuses on alleged Error 1. In fact, Ms. McCutcheon's counsel has stressed to the Court that "the amounts at stake as a result of Errors 2, 3 and 4 ***pale in comparison*** to Error 1." Dkt. 50-1 at 6 (emphasis added).

Notably, participants who are entitled to benefits under Appendix B would not benefit if Ms. McCutcheon were successful on her argument regarding Error 1. Appendix B contains neither the "larger of" language the Complaint focuses on nor the alleged "new PRA formula." Dkt. 21-10 at 7-17. Instead, Appendix B contains only the "Plan's pre-July 1989 final average pay formula." Thus, even if Ms. McCutcheon were correct that Error 1 occurred, which she is not, participants entitled to benefits solely under Appendix B are not asserting that claim. Undoubtedly, and as evidenced by the pleadings to date, Ms. McCutcheon will focus her efforts on the claim which she believes will result in the largest award for her. In fact, if Ms.

McCutcheon is successful in establishing Error 1, she has no need to continue pursuing alleged Error 2 as it would not increase her recovery even if she prevailed in arguing for Error 2.  Dkt. 21-4 at 7 (noting Ms. McCutcheon only raised Error 2 "for completeness" if she is not successful on Error 1").  This is because Error 2 relates solely to benefits accrued under the Grandfathered Plan.

Because Ms. McCutcheon lacks any motivation to pursue Error 2, which could benefit participants under Appendix B, her claims are not typical of Appendix B participants.  *See Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (in ERISA cash balance whipsaw case, finding the named plaintiff an inadequate representative for class members because "[w]e cannot expect [plaintiff] to assert with forthrightness and vigor those interests of other class members that he does not share and in which he has no stake.  Indifference as well as antagonism can undermine the adequacy of representation.").  The Court simply cannot depend on Ms. McCutcheon to make "similar legal arguments to prove the defendant's liability" if she is successful with respect to Error 1.  *Robinson*, 267 F.3d at 155 (internal quotation omitted).  Thus, Ms. McCutcheon's "claims and the class claims are [not] so interrelated [that] the interests of the class members will be fairly and adequately protected in their absence."  *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *Falcon*, 457 U.S. at 158 n. 13).

### 3. A Unique Statute of Limitations Exists to Bar Ms. McCutcheon's Claim for Benefits

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Vengurlekar v. Silverline Technologies Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003); *see also Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 176 (2d Cir. 1990) ("Regardless of whether the issue is framed in

terms of the typicality of the representative's claim, or the adequacy of its representation, there is

a danger that absent class members will suffer if their representative is preoccupied with

defenses unique to it.").  Here, a unique statute of limitation defense exists to Ms. McCutcheon's

claim for benefits, which renders her claims atypical to those of the class members.  *See Novella*

*v. Westchester County*, 661 F.3d 128, 148-49 (2d Cir. 2011) (noting statute of limitations defense

often precludes certification of an ERISA class); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D.

307, 316 (S.D.N.Y. 2003) ("In assessing the typicality of the plaintiff's claims, the court must

pay special attention to unique defenses that are not shared by the class representatives and

members of the class.").

Specifically, Ms. McCutcheon failed to file suit challenging the Committee's denial of

her claim within the contractual limitation period created by the Plan.  Given that she was

represented by counsel throughout the claim and appeal process, any arguments that the

limitations periods in the Plan document were unknown to her or confusing fall flat.  Here,

Section 8.6 of the Plan clearly requires participants to file a lawsuit within 180 days after mailing

or delivery of the denial of their claims.  That Section states:

> If such determination is adverse to such claimant, it shall be binding and
> conclusive unless the claimant notifies the Employee Relations Committee
> within 90 days after the mailing or delivery to him by the Employee
> Relations Committee that he intends to institute legal proceedings
> challenging the determination of the Employee Relations Committee, and
> actually institutes such legal proceeding within 180 days after such
> mailing or delivery.

Dkt. 21-9 at 52.[5]  Ms. McCutcheon neither informed the Committee she intended to institute

legal proceedings within 90 days nor did she do so within 180 days.  *See* McCutcheon Tr. 57:18-

---

[5]     The 2010 Plan and the 1994 Plan both contain this 90/180 day provision.  Dkt. 21-9 at 52.
Thus, while Plaintiff's allegation that the 1994 Plan governs the claim/appeal process is
incorrect, that dispute does not affect this issue.  Ms. McCutcheon's claim is untimely under both
versions of the Plan.

59:3.   Accordingly, Defendants are likely to prevail on the defense that Ms. McCutcheon's

claim is time-barred.  In *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S.Ct. 604 (2013),

the Supreme Court held "reasonable" contractual limitations periods are generally enforceable

for ERISA claims.  Since the issuance of *Heimeshoff*, this Court has broadly adopted its holding.

*See, e.g.*, *Tuminello v. Aetna Life Ins. Co.*, No. 13 CIV. 938 KBF, 2014 WL 572367, at *2

(S.D.N.Y. Feb. 14, 2014) (finding plaintiff had nine months to file his complaint seeking short

term disability benefits, and such a period was reasonable); *Guo v. IBM 401(k) Plus Plan,* 95 F.

Supp. 3d 512, 523 (S.D.N.Y. 2015) (finding beneficiary had fourteen months to file her

complaint seeking retirement benefits, and such a period was reasonable).  Also, other courts

have held a six month deadline to file suit after a final decision is reasonable.  *See Claeys v.*

*Aetna Life Ins. Co.*, No. 1:10-CV-105, 2013 WL 12126005, at *4 (W.D. Mich. Feb. 27, 2013),

*aff'd*, 548 F. App'x 344 (6th Cir. 2013) (six month limit reasonable); *Abena v. Metropolitan Life*

*Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008) (enforcing plan's limitations period when the plaintiff

had only seven months to file his lawsuit after he had exhausted his administrative remedies);

*Dye v. Associates First Capital Corp. Long-Term Disability Plan*, 243 F. App'x 808 (5th Cir.

2007) (enforcing plan requirement that suit be filed within 120 days from final denial); *White v.*

*Worthington Industries, Inc. Long Term Disability Income Plan*, 266 F.R.D. 178, 185 (S.D. Ohio

2010) (holding 71 days left to file suit to be reasonable); *Sheckly v. Lincoln Nat'l Corp.*

*Employees Ret. Plan*, 366 F. Supp. 2d 140, 145-48 (D. Me. 2005) (enforcing plan requirement

that suit be filed within six months from final denial).  Thus, Defendants possess a unique

defense to Ms. McCutcheon's claim that would not be applicable to all members of the class.

Undoubtedly, Ms. McCutcheon will contend that this defense lacks merit.  But that

argument misses the mark.  Defendants must only prove that the defense exists and could

become the focus of the litigation in a way that may harm class members and ultimately risk the class's chance of recovery.  *See In re Independent Energy Holding PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) ("[A] unique defense need not be proven in order to defeat class certification."); *Beck v. Status Game Corp.*, No. 89-CIV-2923, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995) ("[I]t does not matter whether a unique defense ultimately will prove meritorious because the fact remains that [plaintiff] will be required to devote considerable time to rebut the unique defense."); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (affirming denial of class certification based on a 'preliminary finding' that plaintiff would be subject to a unique defense, holding "[a]t this preliminary stage, however, the court cannot be expected to make a final determination [regarding the validity of the unique defense] before trial.  A preliminary finding is sufficient.").  In short, the claims and defenses regarding Ms. McCutcheon are not typical to the class, which precludes class certification.

### B.    Ms. McCutcheon Is Not An Adequate Class Representative under Rule 23(a)(4)

"An essential element of adequacy of representation is that the class representative be sufficiently familiar with the case as to exercise independent control over the attorney." *Scott v. N.Y.C. Dist. Council Carpenters Pension Plan*, 224 F.R.D. 353, 355 (S.D.N.Y. 2004).  This requirement is modest – especially in cases involving complex claims such as this one – but "the standard is not so low as to be meaningless." *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008).  The Second Circuit "as well as many others, has frequently rejected class certification where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Scott*, 224 F.R.D. at 355 (citation and quotations omitted).

18

Despite her claimed intention to serve as a "watchdog" for the class, Ms. McCutcheon does not know what claims have been filed in this lawsuit nor the facts underlying her (and the class') legal claims.  *See* McCutcheon Tr., 87:2-24.  These deficiencies plainly go to the "central issues" of the suit and "threaten to undermine plaintiffs' case as a whole," rendering Ms. McCutcheon inadequate to represent the class.  *Scott*, 224 F.R.D. at 355-56.

As an initial matter, there are five counts in the Complaint, but Ms. McCutcheon testified that she brought only the denial of benefits claim (Count Two):

> Q.   Can you tell me about the claims that you are making in this litigation?
> A.   To correct the miscalculation of a residual annuity.
> Q.   Are you making any other claims?
> A.   No.
> Q.   Are you claiming that anybody associated with Colgate breached their fiduciary duties?
> A.   No.
> Q.   Are you claiming that anybody associated with Colgate violated a Court Order?
> A.   No.
> Q.   I want to go through a document with you.
> Q.   Are you claiming that anybody associated with Colgate failed to provide you documents or information that you are entitled to?
> A.   I would really have to say you would you have to ask my lawyer these questions.

McCutcheon Tr. 25:23-26:20.  Further, Ms. McCutcheon was entirely unaware that she is pursuing any claims on an individual basis.  She believes that only class claims are being asserted.  *Id.* at 88:9-20 (responding "[t]hat does not sound like something I am doing, no.  I am in the class action lawsuit", when asked whether she is pursuing any claims individually). Further, Ms. McCutcheon does not understand the basic contours of the class she seeks to represent.  She incorrectly testified that members of the class did not have to participate in the Grandfathered Plan to be a part of the proposed class, and could not describe the differences between Appendix B, C, and D class members.  *Id*. 82:15-18; 89:18-90:12.  This renders her

inadequate.  *See Scott*, 224 F.R.D. at 356 (finding representative inadequate where he, *inter alia*, "incorrectly stated that the class comprises all of the [p]lan's participants").

Even if Ms. McCutcheon demonstrated an understanding of the claims being asserted here, it became clear during her deposition that she will simply defer to her lawyer on any and all issues.  This also renders her an inadequate class representative.  *See Baffa*, 222 F.3d at 61 (holding a "class representative status may properly be denied 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'"); *In re Monster*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (internal citations and quotations omitted) ("A class representative must not simply lend his name to a suit controlled entirely by the class attorney, as the class is entitled to an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit.").

As set forth above, at the beginning of her deposition, Ms. McCutcheon abandoned the central theory underlying Error 1, Count II and testified that the Committee's reading of the RAA is correct.  McCutcheon Tr. 13:24-15:3.  After being coached by her counsel, McCutcheon Tr. 15:4-19:8, Ms. McCutcheon refused to provide substantive answers to further questions and claimed that any questions about the claims she was asserting should be directed to her counsel.

Indeed, Ms. McCutcheon testified *over twenty-five* times that she or Defendants would have to "ask" or "discuss" with her counsel questions regarding basic points at issue in this litigation because she was unable to respond on her own.  McCutcheon Tr. *passim*.

Further, Ms. McCutcheon could not recall whether she received a copy of the Complaint before it was filed, and admitted that, though she reviewed it at some point, she made no comments, suggestions, or edits to it – not "a single line of it."  *Id.* at 73:21-74:15.  She did not

review the forty-one page appeal for benefits that was sent to the Committee until after it was

sent.  *Id*. at 39:21-40:12.  In that document, Ms. McCutcheon (or more accurately her counsel)

articulated the "Error 1" theory for the first time.  There is certainly nothing wrong with a party

relying on counsel or experts for actuarial intricacies attendant to a claim for benefits under a

pension plan, but Ms. McCutcheon has ceded all control of this litigation to her counsel, making

her an inadequate class representative.

### C.   Ms. McCutcheon Has No Cause of Action for Benefits Under Appendix D and Cannot Serve as a Class Representative for Those Participants

Lastly, in addition to failing to meet the requirements of Rule 23, Ms. McCutcheon also

does not have standing to assert claims for participants who are entitled to benefits under

Appendix D.  Section 502(a)(1) of ERISA unambiguously provides that a civil action under

ERISA may be brought by a participant or beneficiary "to recover benefits due to him under the

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  "The Supreme Court has

construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly

under ERISA."  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  Here, Ms.

McCutcheon cannot recover benefits due to her under the terms of Appendix D because it is

undisputed that those provisions do not apply to her. Dkt. 21-5 at 3.  Thus, Ms. McCutcheon has

no cause of action to recover benefits under ERISA Section 502(a)(1) for benefits arising under

Appendix D and cannot represent individuals who do.  *See In re Direxion Shares ETF Trust*, 279

F.R.D. 221, 230 (S.D.N.Y. 2012) (explaining plaintiff cannot use Rule 23 to expand his standing;

holding plaintiffs could only represent those who suffered the same injury).

This conclusion comports with both the Second Circuit and this Court's precedent.  For

example, the Second Circuit held that physicians lacked a cause of action under 29 U.S.C. §

1132(a)(3) because they were not "a participant, beneficiary or fiduciary" of the plan at issue. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 360 (2d Cir. 2016). Likewise, this Court held that plaintiffs lacked standing to bring claims related to one pension plan where each of the named plaintiffs were ineligible to participate in that plan. *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 612 (S.D.N.Y. 2015). In the same vein, this Court has held individuals have not suffered an injury-in-fact and lack standing when those individuals were not entitled to benefits under the plans they sought to represent. *Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 224 (S.D.N.Y. 2012) (declining to certify class and finding plaintiff could only bring claims on behalf of plans that purchased certain notes since the alleged injury stemmed from ownership of aforementioned notes). Because Ms. McCutcheon has no right to benefits under Appendix D, she has no cause of action under ERISA for those benefits, suffered no injury from the Committee's interpretation of those terms, and cannot represent individuals who may have a cause of action under Appendix D and allegedly have been harmed. A "class representative must be part of the class" that she purports to represent. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

## D. <u>The Proposed Class Cannot Be Certified under Rule 23(b)</u>

The proposed class – which seeks a determination that would lead solely to monetary relief – also cannot be certified under any sub-point of Rule 23(b). As to Rule 23(b)(1) and Rule 23(b)(2), which provide for neither notice nor the opportunity to opt-out, mandatory classes under these rules "implicate the due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not a

22

designated party or to which he has not been made a party by service of process.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). The Supreme Court long ago held that there was a "substantial possibility" that class actions for monetary relief could only be certified, if at all, under Rule 23(b)(3).  *See Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 120 (1994).  More recently, the Court observed that "[f]or a class-action money judgment to bind absentees in litigation, class representatives must at all times adequately represent absent class members, *and absent members must be afforded notice, an opportunity to be heard, and a right to opt out of the class*."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011) (emphasis added) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985)).  Even if this language leaves room for some monetary relief for mandatory classes, it is in any event clear that under Rule 23(b)(2) that when an action is "predominantly" for monetary relief, "absent class members have a due process right to notice and an opportunity to opt out of class litigation."  *Shutts*, 472 U.S. 797, 811–12 & n. 3.  After the Supreme Court's decision *Dukes*, 131 S.Ct. at 2558-59, notice and opt out rights "are required" when a "claim for money damages is more than incidental."  *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012).  Here, Plaintiff seeks to certify a class that seeks monetary benefits and nothing more.  As such, the class cannot be certified under Rule 23(b)(1) or Rule 23(b)(2).

For purposes of Rule 23(b)(2), Plaintiff attempts to re-cast her claim for monetary benefits as a claim for declaratory relief, with monetary benefits flowing therefrom.  Such a theory does not satisfy Rule 23(b)(2) or alleviate due process concerns.

The putative class does not seek declaratory relief and "incidental" monetary benefits as damages – it seeks monetary benefits only, and such a class cannot be certified under Rule 23(b)(2).  *See Hecht*, 691 F.3d at 223-24 (observing that injunctive relief does not include

monetary relief ordered to compensate plaintiffs for damages resulting from past conduct and that a retrospective class definition ensures that "every member of the class would be entitled to damages, but ... every member would [not] have standing to seek injunctive relief").  It is undeniable that "in the absence of a possible monetary recovery," these class members would not have brought "'suit to obtain the injunctive or declaratory relief sought.'" *Id.* at 224.

Limiting (b)(2) certifications to claims as to which monetary benefits are "incidental" to an injunction or declaratory relief helps to alleviate the concern of whether absent class members would prefer to pursue litigation individually and ensures that due process is satisfied absent Rule 23(b)(3)'s notice and opt-out protections. *Wal-Mart*, 131 S.Ct. at 2560.  When notice and opt out rights are provided, participants get to "decide for themselves whether to tie their fates to the class representatives' or go it alone - a choice Rule 23(b)(2) does not ensure that they have." *Id.* at 2559.  Here, Plaintiff is pursuing four "Errors" that allegedly entitle the class to more monetary benefits.  But not all of the putative class members potentially recover from each "Error," and all of their benefits would not be calculated in the same way given that they participate in different Appendices in the Plan and potentially stand to recover different amounts under each alleged "Error."  Indeed, Ms. McCutcheon has no pecuniary interest to pursue "Error 2" for certain class members if she succeeds on "Error 1," which raises serious due process concerns for certain putative class members if a Rule 23(b)(2) class is certified (given that no class members will receive notice or the ability to opt out).  As such, the class cannot properly be certified under Rule 23(b)(2).

As to Rule 23(b)(3), the proposed class is not "sufficiently cohesive" to warrant certification.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997) (Rule 23(b)(3)'s predominance requirement "trains on the legal or factual questions that qualify each class

member's case as a genuine controversy . . . and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") "Rule 23(b)(3), as an 'adventuresome innovation,' is designed for situations 'in which "class-action treatment is not as clearly called for."' *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation omitted). Thus, "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.*

As set forth above, class members are making different claims for different benefits under three different Appendices. *See also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010) (finding plaintiffs failed to meet the "more demanding" predominance requirement in a breach of contract claim involving a uniform contract where, *inter alia*, unique defenses were at play). Using Ms. McCutcheon as an example, she does not have standing to pursue claims on behalf of putative class members who participated in Appendix D. And if she is successful on her "Error 1" claim, she has no pecuniary interest to pursue an "Error 2" claim on behalf of Appendix B members. The Defendants also have several defenses that are unique to her claims. *Id.* It follows that the class should not be certified under Rule 23(b)(3).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

Dated: June 16, 2016

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Jeffrey Sturgeon

Jeremy P. Blumenfeld
Jeffrey A. Sturgeon (admitted *pro hac vice*)
Brandon J. Brigham (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000 / Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
jeffrey.sturgeon@morganlewis.com
brandon.brigham@morganlewis.com