USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
PAUL CAUFIELD and REBECCA STALEY,                            :
                                                             :
                             Plaintiffs,                     :
                                                             :     16 Civ. 4170 (LGS) (KNF)
            -against-                                        :
                                                             :     **OPINION AND ORDER**
COLGATE-PALMOLIVE CO., et al.,                               :
                                                             :
                             Defendants.                     :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Rebecca McCutcheon (formerly Staley) and Paul Caufield (together, "Plaintiffs") bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), against Defendants Colgate-Palmolive Co. ("Colgate"), Colgate-Palmolive Co. Employees' Retirement Income Plan (the "Plan"), Laura Flavin, Daniel Marsili and the Employee Relations Committee of Colgate-Palmolive Co. (the "Committee"). Plaintiffs move for class certification on their claim for denial of benefits (Count II) pursuant to Federal Rule of Civil Procedure 23 with Plaintiff McCutcheon acting as the sole class representative. For the following reasons, the motion is granted.

I.  **BACKGROUND**

McCutcheon was employed by Colgate from 1979 to 1994. She was and is a participant in the Plan, which is sponsored by Colgate and administered by the Committee. The Committee is comprised of selected Colgate officials, including Defendants Flavin and Marsili.

The Plan is a defined benefit pension plan. As such, the Plan guarantees that each participant will receive a certain level of benefits, known as accrued benefits, expressed as the amount the participant would receive annually as an annuity upon reaching normal retirement

age -- here, age 65.  A participant's accrued benefit is determined under the terms of the Plan.  Prior to July 1, 1989, the Plan used a final average pay formula, meaning in simplest terms that the level of benefits was based on the participant's length of service and average salary during her final years of service.  Effective July 1, 1989, the Plan became a cash balance plan, which essentially uses a career average pay formula.  Specifically, the new plan formula defines a participant's benefits in terms of a Personal Retirement Account ("PRA") balance, which reflects accumulated monthly pay-based credits and interest.  Upon retirement, the PRA balance is converted into an annuity or, if preferred, paid as a lump sum.  ERISA requires that the lump sum offered be worth at least as much, in present terms, as the annuity payable at normal retirement age using statutorily mandated assumptions.

To ensure that participants with pre-July 1989 benefits received the full benefits to which they were entitled under the Plan in light of the changed formula, Colgate enacted Plan Appendices B, C and D.  Appendix B sets forth rules that are used in the determination of Appendices C and D.  Appendix C § 3 provides that all participants with pre-July 1989 benefits were to receive the larger of the annuity calculated under (1) the Plan's pre-July 1989 final average pay formula or (2) the Plan's new PRA formula.  Appendix C § 2 provides that participants who opted to continue earning benefits under the pre-July 1989 final average pay formula by making employee contributions to the Plan would receive the larger of the annuity calculated under (1) the Plan's pre-July 1989 final average pay formula as continued in effect post-July 1, 1989, or (2) the Plan's new PRA formula plus an annuity based on the employee's contributions.  Appendix D applies to those Plan participants with pre-July 1989 benefits who met certain age and years of service requirements as of June 30, 1989, and provides that they will

receive the larger of the annuity calculated under (1) the "transition provision" described in Appendix D or (2) the Plan's new PRA formula.

McCutcheon took her benefits under the Plan in the form of a lump sum when she left Colgate in 1994. She was eligible to receive benefits under Appendix C § 2 of the Plan because she elected to make employee contributions to continue earning benefits under the pre-July 1989 final average pay formula. She was not eligible under Appendix D.

By 2005, Defendants recognized that, when the cash balance plan was established in 1989, certain benefits that had accrued under the final average pay plan were not properly preserved when individuals elected lump sum payments under the cash balance plan. To correct this problem, Colgate enacted the Residual Annuity Amendment ("RAA") in 2005. The RAA amended the Plan and granted an "additional benefit" to any participant with pre-July 1989 benefits who elected a lump sum and whose benefit under Appendices B, C or D was greater than her benefit under the PRA formula. The RAA was deemed effective as of July 1, 1989. For reasons that are not clear, Defendants did not implement the RAA until 2014.

In August 2014, Defendants granted additional benefits under the RAA to a few hundred Plan participants. McCutcheon was not among them. In a letter to the Plan Administrator dated July 30, 2014, McCutcheon stated that it had come to her attention that she should be receiving a RAA benefit in addition to her original lump sum benefit. She requested that the Plan provide her a RAA benefit and an explanation of how it was calculated. By letter dated November 4, 2014, Flavin, Colgate's Vice President for Global Compensation and Benefits, responded on behalf of the Committee and denied McCutcheon's claim for an RAA benefit.

Counsel for Plaintiffs subsequently requested additional documents, records and information from Defendants and, by letter dated April 6, 2015, appealed both (1) the denial of

McCutcheon's claim for a RAA benefit and (2) the determination of the amount of RAA benefit.[1]  Marsili, Colgate's Senior Vice President, Global Human Resources, denied McCutcheon's claims appeal by letter dated June 4, 2015.  On June 3, 2016, Plaintiffs filed this putative class action lawsuit.

Plaintiffs allege that Defendants made four errors in calculating benefits under the RAA:

- ignoring the PRA-plus-Employee Contribution benefit and not determining whether that benefit was larger than the benefit Plaintiffs would have received under the final average pay plan ("Error 1");

- miscalculating the benefit Plaintiffs would have received under the final average pay plan by applying the wrong Plan provision to determine Plaintiffs' applicable Estimated Social Security Primary Insurance Amount ("Error 2");

- miscalculating the PRA-plus-Employee Contribution benefit by applying a prohibited pre-retirement mortality discount ("Error 3");

- offsetting the RAA benefits with payments received as part of the settlement in *In re Colgate-Palmolive Co. ERISA Litigation* ("*Colgate I*"), Master File No. 07 Civ. 9515 (S.D.N.Y.) ("Error 4").

Count II of the Complaint seeks to recover the RAA benefits that Plaintiffs were denied due to these errors.

Plaintiffs move for class certification on Count II, proposing that McCutcheon serve as the sole class representative on behalf of "[a]ny person who, under any of Appendices B, C or D of the [Plan], is entitled to a greater benefit than his or her Accrued Benefit as defined in Plan § 1.2, provided such person received a lump sum payment from the Plan, and the beneficiaries and estates of any such person."  Plaintiffs request that their counsel, Gottesdiener Law Firm, PLLC, be appointed class counsel.

---

[1] Plaintiffs are beneficiaries of each other and assert claims in that capacity in addition to the claims they assert as participants in the Plan.

**II.     STANDARD**

Under Rule 23(a), Fed. R. Civ. P., plaintiffs may sue as a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A class must also satisfy at least one of the provisions of Rule 23(b), Fed. R. Civ. P.  *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  Here, Plaintiffs seek certification under any of the three subsections of Rule 23(b).  Rule 23(b)(1) permits class certification if prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) permits class certification if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23 "does not set forth a mere pleading standard."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

5

"Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 564 U.S. at 350). This requires a "rigorous analysis" that "frequently entail[s] overlap with the merits of the plaintiff's underlying claim." *Roach*, 778 F.3d at 407 (quoting *Comcast*, 133 S. Ct. at 1432). The plaintiff must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016).

## III.   DISCUSSION

Plaintiffs' motion for class certification is granted because they have proven, by a preponderance of the evidence, that Rule 23's requirements are met and that McCutcheon has class standing.

### A.   The Requirements of Rule 23(a)

#### 1. Numerosity

The parties do not dispute numerosity. "Rule 23(a)(1) does not mandate that joinder of all parties be impossible -- only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). Plaintiffs estimate based on a spreadsheet produced by Defendants that the proposed class consists of approximately 1,200 individuals. The numerosity requirement is satisfied.

### 2. Commonality

The parties also do not dispute commonality. Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A question of law or fact is common to the class if the question is 'capable of classwide resolution -- which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (some internal quotation marks, citations and alterations omitted) (quoting *Wal-Mart*, 564 U.S. at 350). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* Here, whether Defendants committed each of the four errors on which Plaintiffs base their claim for benefits are common questions of fact, and their answers will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. The commonality requirement is therefore satisfied.

### 3. Typicality

Plaintiffs have shown typicality. Typicality is intended to "ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The requirement is met where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *accord In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15 Civ. 1249, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017). As Defendants used a consistent method to calculate all the proposed class members' RAA benefits, the alleged errors

in that method would have applied across the class. McCutcheon's claims for benefits denied due to the alleged errors are therefore typical of the claims of the class.

Defendants' arguments that McCutcheon is atypical are unpersuasive. First, McCutcheon's deposition testimony regarding the purpose of the RAA will not become the focus of the litigation. McCutcheon lacks the personal knowledge to testify about Defendants' purpose in adopting the RAA, and she lacks the expertise to opine on the meaning of the RAA's terms. *See* Fed. R. Evid. 602, 701. Second, McCutcheon is motivated to pursue all four alleged errors even though the Complaint focuses on Error 1. Because under Plaintiffs' theory the proposed class members are entitled to an RAA benefit based on the larger of two benefit formulas, and each formula is impacted by different alleged errors, McCutcheon has incentive to investigate all four errors to ensure that she receives her maximum RAA benefit.

Third, the statute of limitations defense that Defendants raise against McCutcheon's claim is not a unique defense that warrants denial of class certification. "[A] court need not definitively resolve whether such defenses would succeed on their merits, but also need not deny certification merely because of the presence of a colorable unique defense. In practice, courts in this Circuit navigate a middle course between these two extremes when addressing unique . . . statute-of-limitations defenses, refusing certification only when confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007).

Defendants have not made a showing sufficient to avoid class certification that McCutcheon's claim is time barred by the Plan's 180-day contractual limitations period. Although reasonable contractual limitations periods in ERISA plans generally are enforceable, *see Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013), and it is undisputed

that McCutcheon filed this suit more than 180 days after the date Defendants denied her administrative appeal, McCutcheon has raised two colorable arguments for not enforcing the limitations period against her. First, she argues that the limitations period is unenforceable because Defendants omitted it from their denial letter in violation of 29 C.F.R. § 2560.503-1(g)(1)(iv). Second, she contends that Defendants waived the limitations period or should be estopped from asserting it because the denial letter stated that she had one year to file suit. Because Defendants have not clearly shown that the limitations period will apply to bar McCutcheon's claim, this defense does not render McCutcheon atypical at this stage of the litigation.

### 4. Adequacy

Plaintiffs also have demonstrated adequacy. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and "raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart*, 564 U.S. at 345, 349 n.5. To determine whether a named plaintiff will be adequate, courts must consider whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *accord Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518, 2017 WL 1954934, at *8 (S.D.N.Y. May 10, 2017). Here, McCutcheon and the putative class members share an interest in seeing that the RAA benefits are properly calculated, and McCutcheon does not appear to have interests antagonistic to other class members. McCutcheon's counsel also is qualified to conduct this litigation, as discussed more fully below.

Defendants' argument that McCutcheon is not an adequate class representative because she does not understand the case and defers to her lawyer is not persuasive. The claims in this case implicate highly technical Plan language, legal rules and actuarial calculations. It is understandable that McCutcheon, a non-lawyer, would have difficulty answering questions about the claims. McCutcheon showed in her deposition a general understanding of the case and expressed her desire to be "a watchdog for [the proposed class] to make sure that we all get our calculations corrected" and "to make sure [her counsel] [i]s handling everything correctly." This is sufficient to meet the adequacy requirement. *Cf. Baffa*, 222 F.3d at 61 ("[C]lass representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.").

### B.     Class Certification Under Rule 23(b)(1)

The proposed class is certified under both subparts of Rule 23(b)(1). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.).[2]

"The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). If two courts came to different conclusions as to how the proposed class members' RAA benefits must be calculated, Defendants would face a

---

[2] Plaintiffs seek certification under Rule 23(b)(3) only if certification is denied under Rule 23(b)(1) and (b)(2). Accordingly, certification under Rule 23(b)(3) is not addressed.

conflict between treating Plan participants alike and complying with each separate court order. Accordingly, the class is certified under Rule 23(b)(1)(A).

Class certification is also appropriate under Rule 23(b)(1)(B), which applies where "any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Because a determination of any one of the proposed class members' claims would have a strong, if not determinative, influence on the outcome of other class members' claims, the proposed class is certified under Rule 23(b)(1)(B).

Defendants misconstrue the requested relief when they argue that Plaintiffs seek only monetary benefits and therefore can proceed as a class only under Rule 23(b)(3), which provides for notice and opt out rights. "Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012). Here, however, the monetary benefits to the proposed class are merely incidental to the adjudication of the alleged errors. The Complaint seeks judgment against Defendants on all claims and an order "requiring the benefit amounts due or past due under the terms of the Plan in accordance with the requirements of ERISA, and, where applicable, for the Plan to pay the difference" to the affected class members. Thus, the objective of this action is to determine the correct method for calculating the RAA, which could have the incidental effect of causing the Plan to distribute monetary benefits to class members. Plaintiffs have cited many similar cases that were certified under Rule 23(b)(1), *see, e.g.*, *In re Citigroup Pension Plan*, 241 F.R.D. at 179–80; *Cottillion v. United Ref. Co.*, No. 09 Civ. 140E, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013), *aff'd,* 781 F.3d 47 (3d Cir. 2015), while Defendants have not cited any authority specifically stating that

certifying claims for denial of benefits under Rule 23(b)(1) violates class members' due process rights.

Because all of the requirements of Rule 23(a) are satisfied, and certification is appropriate under Rule 23(b)(1)(A) and Rule 23(b)(1)(B), Plaintiffs' motion for class certification is granted.

### C.     Class Standing

Defendants challenge the scope of the class on the ground that McCutcheon lacks standing to assert claims on behalf of class members entitled to benefits under Appendix D, which does not apply to her.  Under the doctrine of class standing, McCutcheon may assert claims on behalf of these class members.

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotation marks and citations omitted).  "This test insures that 'the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf.'"  *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16 Civ. 1251, 2017 WL 2909714, at *7 (D. Conn. July 6, 2017) (quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014)).  "When a claim on behalf of an unnamed class-member involves similar inquiries and proof as the named plaintiff's claim, the 'same set of concerns' are implicated and the named plaintiff has class standing to bring the claim."  *Dezelan*, 2017 WL 2909714, at *7 (quoting *NECA*, 693 F.3d at 162); *see Ret. Bd.*, 775 F.3d at 161 (noting that the

named plaintiff in *NECA* had class standing "largely because the proof contemplated for all of the claims would be sufficiently similar").

Here, McCutcheon alleges that she personally has been deprived of benefits to which she is entitled under the RAA due to the four alleged errors. She alleges that the other class members, including those to whom Appendix D applies, were injured due to the same errors in calculating the RAA benefits. Because both McCutcheon's and the Appendix D class members' claims are premised on the same alleged errors and involve similar "better of two" formulas, the claims involve similar inquiries and proof, and therefore implicate the same set of concerns. *See Dezelan*, 2017 WL 2909714, at *7. McCutcheon therefore has class standing to pursue claims on behalf of the absent class members, including those entitled to benefits under Appendix D. *See NECA*, 693 F.3d at 162 (holding that named plaintiff had class standing to sue on behalf of absent class members whose investments were backed by loans from the same originators and included nearly identical misrepresentations in separate offering documents as the named plaintiff's investments).

The cases Defendants cite in support of their class standing argument are inapposite. In *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012), the court held at the motion to dismiss stage that the named plaintiffs "may proceed only with claims related to Funds in which they purchased shares . . . and may not pursue claims relating to Funds in which they did not." McCutcheon does not bring separate claims based on Appendix C and Appendix D the way the named plaintiffs in *In re Direxion* did with the various funds. Rather, McCutcheon seeks to bring the same claims -- for recovery of benefits denied due to the same four alleged errors -- on behalf of Plan participants entitled to benefits under Appendix C or D.

13

In *In re Citigroup ERISA Litigation*, 104 F. Supp. 3d 599, 612–13 (S.D.N.Y. 2015), *aff'd sub nom. Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016), the Court dismissed claims under one of two 401(k) plans at issue because none of the named plaintiffs were participants in that plan. Here, McCutcheon and all putative class members are participants in the same plan and were subject to the same alleged errors, even though some are covered by Appendix C and others by Appendix D.

Finally, in *Board of Trustees of Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.*, 287 F.R.D. 216, 224 (S.D.N.Y. 2012), the court held that "[o]f the 52 ERISA-governed plans, Plaintiff has standing to represent only those plans that invested in Plaintiff's Lehman Note" because the alleged injury was specific to holders of the Lehman Note. Here, McCutcheon claims that the four alleged errors caused injury to participants covered by Appendix D as well as participants, such as herself, who are covered by Appendix C.

Because McCutcheon alleges that she personally has been denied benefits as a result of the four alleged errors and that all putative class members have been denied benefits based on the same alleged errors -- albeit under a different appendix in some cases -- McCutcheon has class standing.

### D.    Appointment of Class Counsel

Plaintiffs' counsel, Gottesdiener Law Firm, PLLC, is appointed to serve as class counsel. When appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel at the Gottesdiener Law Firm are experienced litigators who have served as lead counsel in numerous ERISA pension benefit class actions. *See, e.g.*, *Laurent v. PricewaterhouseCoopers, LLP*, No. 06 Civ. 2280, 2014 WL 2893303, at *5 (S.D.N.Y. June 26, 2014); *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 522–23 (S.D.N.Y. 2015), *aff'd*, No. 15-3602-CV, 2017 WL 2871358 (2d Cir. July 6, 2017); *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 437 (6th Cir. 2009). Plaintiffs' counsel is responsible for first identifying the four alleged errors and served as class counsel in *Colgate I*. Plaintiffs have shown that the appointment of the Gottesdiener Law Firm as class counsel is warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED. It is hereby ordered that Plaintiff Rebecca McCutcheon is appointed the class representative to sue on behalf of a class of "any person who, under any of Appendices B, C or D of the Plan, is entitled to a greater benefit than his or her Accrued Benefit as defined in Plan § 1.2, provided such person received a lump sum payment from the Plan, and the beneficiaries and estates of any such person." It is further ordered that Gottesdiener Law Firm, PLLC is appointed class counsel.

The Clerk of Court is respectfully directed to close the motion at Docket No. 59 and to amend the caption of this case to be: "McCutcheon, et al. v. Colgate-Palmolive Co., et al."

Dated: July 27, 2017
      New York, New York

                                         **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**