```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
REBECCA M. MCCUTCHEON, et al.,                                :
                                                              :
                                      Plaintiffs,             :    16 Civ. 4170 (LGS)
                   -against-                                  :
                                                              :    OPINION & ORDER
COLGATE-PALMOLIVE CO., et al.,                                :
                                                              :
                                      Defendants.             :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff and class representative Rebecca McCutcheon, on behalf of herself and others similarly situated, moves for entry of a revised final judgment. The contents of the revised final judgment are undisputed except for two pension benefit calculation issues. For the reasons below, Plaintiffs' motion is granted, resolving the two disputed issues in Plaintiffs' favor.

Familiarity with the factual and procedural history is assumed. *See McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 678 (2d Cir. 2023) ("*McCutcheon II*") (affirming grant of partial summary judgment to Plaintiffs); *McCutcheon v. Colgate-Palmolive Co.*, 481 F. Supp. 3d 252, 256 (S.D.N.Y. 2020) ("*McCutcheon I*") (granting Plaintiffs partial summary judgment); *Caufield v. Colgate-Palmolive Co.*, No. 16 Civ. 4170, 2017 WL 3206339, at *8 (S.D.N.Y. July 27, 2017) (granting class certification on Count II). All capitalized terms are defined in *McCutcheon I* or by Plaintiffs in their memoranda of law.

I.  **STANDARD**

"Under [the law-of-the-case] doctrine, a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as

regards the law of the case than one who had argued and lost." *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).[1] The mandate rule is "a branch of the law-of-the-case doctrine that rigidly binds the district court, barring it from considering issues explicitly or implicitly decided on appeal." *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024). "The rule is subject to only narrow exception for compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Id.*

**II.     DISCUSSION**

The two remaining issues are (1) which interest rate Defendants must use to calculate the benefit attributable to employee contributions when determining a grandfathered participant's Plan Appendix C § 2(b)(ii) Account-plus-Employee Contribution benefit and (2) whether Defendants may apply a PRMD (pre-retirement mortality discount) when adjusting the age 65 residual annuity due to a participant who takes her retirement benefits before age 65.

**A.     Appendix C § 2(b)(ii) Employee Contributions Interest Rate**

Defendants must use the 20+1% interest rate to calculate the benefit attributable to employee contributions for a participant's § 2(b)(ii) benefit. If a grandfathered participant chose to receive an annuity, she would receive the larger of (1) her § 2(b)(i) grandfathered annuity or (2) her § 2(b)(ii) annuity, which consists of an account-based benefit based on employer contributions, plus a benefit attributable to employee contributions made to maintain the grandfathered annuity.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Defendants no longer dispute, after this Court's and the Second Circuit's decisions, that Defendants must use the 20+1% rate for the portion of the § 2(b)(ii) benefit contributed by the employer.  *See McCutcheon I*, 481 F. Supp. 3d at 264, 269; *McCutcheon II*, 62 F.4th at 695-98.  But Defendants now dispute the interest rate they must use for the portion of the § 2(b)(ii) benefit attributable to employee contributions.

The law of the case dictates that Colgate apply the 20+1% rate to the entire § 2(b)(ii) benefit.  This Court's decision and the Second Circuit's decision were not limited to the employer contribution prong of § 2(b)(ii).  Until now, Defendants consistently made no distinction between employer and employee contributions when converting the combined portions into a single annuity.  This was Defendants' assumption during summary judgment, and again before the Second Circuit on appeal.  Accordingly, this was also the assumption incorporated in the prior decisions.  In *McCutcheon II,* the Second Circuit, following a lengthy analysis, "affirm[ed] the district court's conclusion that Colgate is required to use . . . the 20+1% projection rate when calculating the Appendix C § 2(b)(ii) PRA annuity for the purpose of determining a member's residual annuity."  62 F.4th at 697-98.  The analysis began by stating, "We also agree with the district court that for the purpose of calculating the Appendix C § 2(b)(ii) annuity, Colgate must use the 20+1% rate to project a participant's cash balance account forward and convert it into an age 65 annuity."  *Id*. at 695-696.  "The law of the case doctrine forecloses reconsideration of issues that were decided -- or that could have been decided -- during prior proceedings."  *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021).  That principle applies here.  Defendants have failed to point to "(1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice" as required to overcome the mandate rule.  *See Aquart*, 92 F.4th at 87.

In addition, Defendants themselves have consistently applied the 20+1% rate to both components of the § 2(b)(ii) benefit -- the employer and employee contributions -- as shown by the evidentiary record,[2] including admissions by Colgate's 30(b)(6) witness. For example, when asked whether employer contributions and employee contributions "were treated the same for purposes of converting the account and the employee contributions into a payable annuity benefit," the witness answered, "Yes." Dkt. 242-1 (Defs. 30(b)(6) 4/25/19 Tr.) at 352:16-353:7. Defendants also communicated to Plan participants that this was the approach.[3] As *McCutcheon II* stated, "Consistent with the text of the Plan, Colgate informed these members that their PRA annuities were worth a certain amount based on a 20+1% projection rate when they left the company. Colgate cannot arbitrarily adopt a lower projection rate to retroactively change those prior valuations." 62 F.4th at 697.

Defendants' further arguments are rejected as they are waived under the mandate rule and conflict with their own prior interpretation of the law and the Plan. Defendants must apply the 20+1% rate to the entire § 2(b)(ii) benefit.

---

[2] *See* Dkt. 263 (Deutsch Rep.) ¶¶ 33, 71-75, 79-96 (showing, for example, that Defendants converted the entire account of Ms. McCutcheon, Mr. Cross, Mr. Carroll and Mr. Ramaswami, respectively, at the 20+1% rate -- both employer and employee contributions -- when determining each participant's § 2(b)(ii) annuity); Morgan 5/2/19 Tr. at 481:18-23, 491:12-496:16, 497:18-498:13, 564:12-566:9 (Defendants' actuarial consultant did not dispute that Defendants converted Mr. Ramaswami's entire account at the 20+1% rate); Dkt. 242-1 (Defs. 30(b)(6) 4/25/19 Tr.) at 351:11-14, 352:16-353:7 (quoted in the text above); Defs. 30(b)(6) 4/26/19 Tr. at 463:21-464:8 (admitting that the account converted at the 20+1% rate includes employee contributions).

[3] *See, e.g.*, Dkt. 242-20 (Plan Pension Calculation Details sent to Mr. Ramaswami) at TWC000013255 (dividing the *total* of Mr. Ramaswami's § 2(b)(ii) benefit employer and employee contributions -- $250,413.71 -- by one lump sum factor for annuity conversion -- 103.7164 -- to reach the monthly benefit payable on his retirement age, $2,414,41).

4

B.     **Residual Annuity PRMD**

Similarly, under the law of the case doctrine, Defendants cannot apply a PRMD to adjust the age 65 residual annuity for a participant who takes early retirement. As with the § 2(b)(ii) benefit interest rate issue discussed above, Defendants never previously raised this argument. In *McCutcheon I*, this Court granted summary judgment to Plaintiffs on the entirety of Error 3, which described Defendants' improper use of a PRMD to calculate residual annuities as a violation of the IRC and ERISA actuarial equivalent rules. 481 F. Supp. 3d at 266-69. The Second Circuit affirmed. *McCutcheon II*, 62 F.4th at 698-99. The grant of summary judgment on Error 3 rested on two alternative bases, one procedural and one substantive. Similarly, here, Defendants' argument is rejected on independent procedural and substantive grounds.

First, Defendants did not oppose Plaintiffs' arguments on this error in their summary judgment opposition brief, providing one basis to grant summary judgment. *McCutcheon I*, 481 F. Supp. 3d at 267. Defendants subsequently made "no effort to contest the district court's determination regarding its failure to respond" on appeal. *McCutcheon II*, 62 F.4th at 698 n.23. Defendants' argument is waived. They cannot now argue the use of a PRMD in some new part of the residual annuity calculation. *See, e.g.*, *United States ex rel. Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, No. 15 Civ. 4961, 2020 WL 2530180, at *7 (S.D.N.Y. May 19, 2020) (rejecting plaintiff's new arguments under the law of the case doctrine because they "were not made in its prior appeal").

On the merits, Defendants' argument is unpersuasive. In context, it is as follows: it is undisputed that Defendants cannot apply a PRMD to the calculation of the AE of LS (the age 65 actuarial equivalent of a participant's lump sum payment) because the lump sum is "a benefit that must be paid in all events and does not decrease if the Participant dies prior to reaching age

5

sixty-five." *McCutcheon I*, 481 F. Supp. 3d at 268; *see also McCutcheon II*, 62 F.4th at 699.  To apply a PRMD in this scenario would result "in a present value that is less than the corresponding normal retirement benefit," *McCutcheon I*, 481 F. Supp. 3d at 268, which would violate 26 C.F.R. § 1.417(e)-1(d)(1)(i)(A) ("In the case of an optional form of benefit payable before normal retirement age, the present value of the optional form . . . may not be less than the present value of the accrued benefit payable at normal retirement age.").  Defendants argue that they can apply the PRMD to the discount step in the residual annuity calculations, the adjustment of a residual annuity from age 65 to payment age, because the residual annuity is not a benefit that must be paid in all events (i.e., there is no survivorship option for the residual annuity).  This argument misses the mark.

The RAA (Residual Annuity Amendment) "functions to remedy the underpayment of lump sums with an additional residual annuity such that the lump sum and residual annuity together ensure compliance with the I.R.C.'s and ERISA's present value requirements." *McCutcheon II*, 62 F.4th at 699.  In other words, the purpose of the residual annuity is to remedy the Plan's prior present value violations.  If Defendants cannot apply a PRMD to adjust the lump sum from the payment age to age 65, they cannot then apply a PRMD to adjust the residual annuity from age 65 to the payment age.  "[T]he total value of the benefit paid cannot be less than the value of the accrued benefit determined using IRC § 417(e)." *See McCutcheon I*, 481 F. Supp. 3d at 257.

The relevant inquiry is not whether there is a survivorship option for the residual annuity but whether there is a survivorship option for the original total accrued benefit due.  Here, there is such an option. *See McCutcheon II*, 62 F.4th at 699 (since "the Plan also defines the death benefit as the Actuarial Equivalent of the Accrued Benefit . . . in the event of a member's death,

6

her beneficiary would receive a benefit that is effectively equal to the accrued benefit"). The same rationale the Second Circuit applied to Colgate's unlawful use of the PRMD with respect to the AE of LS applies here: "Because the value of the benefit paid if a member dies before 65 is the same as the Plan's normal retirement benefit, we conclude that Colgate's use of a PRMD to determine the . . . make-whole residual annuity results in an optional form of benefit that is less than the corresponding normal retirement benefit." *See id.*

Therefore, Defendants cannot apply a PRMD to adjust the residual annuity from age 65 to payment age.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for entry of a revised final judgment is **GRANTED**. Defendants' request for oral argument is **DENIED** as moot. An Order and Revised Final Judgment will be separately docketed.

The Clerk of Court is respectfully directed to close the motions at Dkts. 295 and 303.

Dated: March 28, 2024
　　　 New York, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**LORNA G. SCHOFIELD**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**