**MANDATE**

24-1419
*McCutcheon v. Colgate-Palmolive Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on 4th day of April, two thousand twenty-five.

PRESENT:

    ROBERT D. SACK,
    BETH ROBINSON,
    MYRNA PÉREZ,
        *Circuit Judges*.

———————————————————

REBECCA MCCUTCHEON, on behalf of herself and on behalf of all others similarly situated, PAUL CAUFIELD, on behalf of himself and on behalf of all others similarly situated,

    *Plaintiffs-Appellees*,

        v.        No. 24-1419

COLGATE-PALMOLIVE CO., COLGATE-PALMOLIVE CO. EMPLOYEE'S RET. INCOME PLAN, LAURA FLAVIN, DANIEL MARSILI, EMPLOYEE RELATIONS COMMITTEE OF COLGATE-PALMOLIVE CO.,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED  4/28/2025

MANDATE ISSUED ON 04/28/2025

*Defendants-Appellants.*[*]

_____

| | |
|---|---|
| FOR DEFENDANTS-APPELLANTS: | LAUREN WILLARD ZEHMER (Robert S. Newman, Robert A. Long, Jr., *on the brief*), Covington & Burling LLP, Washington, D.C. |
| FOR PLAINTIFFS-APPELLEES: | LEON DAYAN, Bredhoff & Kaiser P.L.L.C., Washington, D.C. (Elisabeth Oppenheimer, Bredhoff & Kaiser P.L.L.C., Washington, D.C., Eli Gottesdiener, Gottesdiener Law Firm, P.L.L.C., Brooklyn, NY, *on the brief*) |

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 26, 2024, is **AFFIRMED**.

Plaintiffs began this litigation nearly a decade ago seeking damages under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, for the improper administration of an employee retirement benefits plan (the "Plan") by their former employer, Colgate-Palmolive. This case is before us for the second

---

[*] The Clerk's Office is respectfully directed to amend the caption as reflected above.

2

time, now on Defendants' appeal from an amended judgment implementing our prior mandate in *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674 (2d Cir. 2023) ("*McCutcheon II*").  We assume the parties' familiarity with the underlying facts, procedural history, arguments on appeal, and our decision in *McCutcheon II*, to which we refer only as necessary to explain our decision.

I. BACKGROUND

In 1994, Defendants amended the Plan, retroactive to July 1989, to change the way they calculated retirement benefits for participating employees (or "members"), including Plaintiffs.  Under the version of the Plan in effect before July 1989 (the "pre-1989 Plan"), a member "could receive a retirement benefit *only* in the form of a monthly annuity beginning at the normal retirement age of 65." *McCutcheon II*, 62 F.4th at 679.  A member's accrued benefit was based on years of service, final average earnings, and estimated Social Security benefits.  *Id.* at 678–79.  This is the "grandfathered" annuity.

Under the Plan as amended, a member's annuity was calculated based on a hypothetical cash balance in a "Personal Retirement Account" ("PRA") funded by employer contributions.  Members could elect either a lump sum or a lifetime monthly annuity. *Id.* at 679.  Members who began accruing benefits under the pre-

3

1989 Plan could elect to make their own contributions to the Plan and accrue benefits toward *both* annuities—the grandfathered annuity and the PRA annuity. Upon retirement, they would be entitled to the more advantageous of the two. *Id.*

In 2005, Defendants added a "Residual Annuity Amendment" to the Plan, creating a Residual Annuity benefit designed to correct certain unlawful benefit forfeitures arising from the 1994 amendment to the Plan that occurred when certain members elected to take their retirement benefits as a lump sum. *Id.* at 682. An unlawful forfeiture arose when the value of the lump sum distribution was less than the "actuarial equivalent" of the annuity. *Id.* at 680. The proper calculation of this Residual Annuity is at the center of this appeal.

In 2016, Plaintiffs, who accrued benefits under both the grandfathered annuity and the PRA annuity, and who, upon retirement, elected to take a lump sum retirement benefit, sued under ERISA, arguing that the Plan had not paid them the benefits, including the full Residual Annuity benefits, they were due. The district court granted summary judgment to Plaintiffs with respect to a number of their claims, *McCutcheon v. Colgate-Palmolive Co.*, 481 F. Supp. 3d 252, 256 (S.D.N.Y. 2020) ("*McCutcheon I*"), and we affirmed, *McCutcheon II*, 62 F.4th at 699–700.

4

After we affirmed in *McCutcheon II*, Plaintiffs moved in the district court for a revised final judgment to resolve two disputed Residual Annuity calculation issues. Over Defendants' opposition, the district court granted Plaintiffs' request for a revised final judgment, applying our decision in *McCutcheon II* and the law-of-the-case doctrine and rejecting Defendants' arguments on the merits. *McCutcheon v. Colgate-Palmolive Co.*, No. 16-cv-4170, 2024 WL 1328217 (S.D.N.Y. Mar. 8, 2024) ("*McCutcheon III*"). Defendants appealed.

## II. DISCUSSION

We review a district court's implementation of our mandate without deferring to the district court's reasoning or judgment. *Callahan v. County of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024). "When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 182 (2d Cir. 2019).[1] "Where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand." *Id.* at 181–82. We may

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

5

"consider both the express terms and broader spirit of the mandate to ensure that its terms have been scrupulously and fully carried out." *Callahan*, 96 F.4th at 367.

### A. Pre-Retirement Mortality Discount

Defendants first contend that the district court should have permitted them to apply a "pre-retirement mortality discount" ("PRMD") when reducing a Residual Annuity from age 65 to an earlier payment age (for cases in which the member retired and took a lump sum before normal retirement age). A PRMD accounts actuarily for the possibility that a member will die before reaching retirement age and that no benefits will be paid. Defendants contend that the district court did not address whether the mortality discount could be used in adjusting the Residual Annuity from age 65 to an earlier payment age in *McCutcheon I*, and that this Court did not reach it in *McCutcheon II*. And Defendants argue that the reasoning of *McCutcheon II* supports application of the adjustment in this context.

We disagree. That Defendants may not apply a mortality discount is the established law of the case—resolved by *McCutcheon I* and affirmed by *McCutcheon II*.

6

In assessing Defendants' argument, we start at the beginning. Plaintiffs' Complaint defines "Error 3" as Defendants' improper use of a mortality discount in two different calculations relating to the Residual Annuity: the calculation used to "determin[e] the annuity attributable to the lump sum originally paid" (the actuarial equivalent of the lump sum paid to members, sometimes called the "AE of LS"), and the calculation used to determine the "early retirement factor" applied to the calculated Residual Annuity applicable at retirement age (the calculation at issue here). App'x 100 ¶ 102.

After the district court denied Defendants' motion for summary judgment on several issues, Plaintiffs moved for summary judgment on, among other things, "Error[] . . . 3 of the Complaint." App'x 999. Not only did Defendants fail to argue, as they do now, that the two mortality discount calculations identified in Error 3 are subject to different analyses, but they also failed to oppose Plaintiffs' motion for summary judgment on Error 3 *at all*.

For that reason, in *McCutcheon I*, the district court said, "As a threshold matter, Defendants do not oppose Plaintiffs' arguments regarding Error 3 in their opposition brief. Summary judgment is granted on this ground alone." 481 F. Supp. 3d at 267. The court went on to consider the merits and embraced the

7

reasoning that "applying a pre-retirement mortality discount to a retirement benefit that does not decrease if the participant dies would result in a lump sum that was less than the actuarial equivalent of the annuity it was supposed to replace." *Id.* After its merits analysis, the district court reiterated, "summary judgment is granted to Plaintiffs on Error 3." *Id.* at 269.

On appeal from *McCutcheon I*, Defendants did not argue, as they do now, that one of the two calculations identified as Error 3 is subject to a different analysis. It simply contested the district court's conclusion that it should not use a mortality discount, focusing on the AE of LS calculation. *See* Appellants' Br., *McCutcheon II*, No. 20-3225, Dkt. No. 74, at 58–60 (2d Cir. May 10, 2021).

We noted in *McCutcheon II* that Defendants had made no effort to contest the district court's determination that they had failed to respond to Plaintiffs' motion for summary judgment as to Error 3. 62 F.4th at 698 n.23. We then went on to affirm the district court's summary judgment as to Error 3 on the merits, focusing particularly on the AE of LS calculation. *See id.* at 698–99 (explaining that Defendants' "use of a PRMD to determine the present value of the lump sum when calculating a make-whole residual annuity results in an" impermissible forfeiture). This focus makes sense; Defendants never called for a separate analysis of the

8

mortality discount as applied to the early-retirement adjustment to the normal-age-retirement Residual Annuity.

That doesn't mean the issue wasn't decided. It clearly was. It was part and parcel of Error 3, and we see no evidence that Plaintiffs abandoned their request for relief for Error 3 in its entirety. Rather, Plaintiffs' Complaint reflects its view that each of the two calculations resulted in an unlawful forfeiture. If Defendants thought otherwise, it was incumbent on them to make that argument in *McCutcheon I* and *McCutcheon II*. That they did not do, despite the issue's being "ripe for review." *Havlish*, 934 F.3d at 181. The district court was therefore barred "from reopening the issue on remand," *id.* at 182, and it properly declined to do so.

### B. Interest Rate for Projecting Forward Employee Contributions

Defendants' argument with respect to the projection rates suffers from the same flaw. They argue that, when converting the hypothetical PRA cash balance into a single life retirement age annuity, a lower rate may be used to project an *employee's* contributions than the *employer's* contributions.

As noted above, though the PRA benefits may be paid in the form of an annuity, they accrue as a cash balance in a hypothetical retirement account.

9

Defendants contribute a fixed percentage of the member's annual pay to that account. *See McCutcheon II*, 62 F.4th at 679. Under Appendix C of the Plan, which applies to grandfathered employees, members may make a one-time election to contribute a percentage of their income going forward to maintain a right to their grandfathered annuity benefit. Upon retirement, a member is entitled to the larger of the (1) grandfathered annuity benefit or (2) an annuity that is the actuarial equivalent of the member's accrued PRA benefit plus the member's contributions paid to retain rights to a grandfathered annuity. This latter annuity benefit is the "§ 2(b)(ii) benefit." App'x 322–23.

In *McCutcheon I*, the district court held that the § 2(b)(ii) benefit "is based on the . . . 20+1% rate because that is the interest rate assumption in the Plan that Defendants actually used" for the relevant members. 481 F.Supp.3d at 264. The abbreviation "20+1%" refers to the interest rate for 20-year Treasury bills, plus 1%. *Id.* at 257. In its analysis, the district court did not distinguish between that component of the annuity funded by the employer's contributions to the hypothetical PRA cash balance and that component funded by the employee's contributions. It referred to the § 2(b)(ii) benefit broadly; implicit in its reasoning was that the projections of both the employee contributions and the employer-

10

contribution-based PRA cash balance were part of a single process, subject to a single projection rate. The Court ordered Defendants to recalculate benefits using the 20+1% projection rate to convert the cash balance into an age sixty-five annuity for members younger than sixty-five. *Id.* at 269.

On appeal, in *McCutcheon II*, Defendants challenged the district court's analysis with respect to the § 2(b)(ii) annuity calculation, arguing that the court relied on an inapplicable provision in the Plan to support its conclusion. In their brief, Defendants highlighted that the § 2(b)(ii) annuity "is the actuarial equivalent of the [member's] Account plus his or her contributions." Appellants' Br., *McCutcheon II*, No. 20-3225, Dkt. No. 74, at 57 (2d Cir. May 10, 2021). They did not further argue that those two elements of the § 2(b)(ii) determination might rest on different projection rates.

We affirmed the district court, agreeing that "for the purpose of calculating the Appendix C § 2(b)(ii) PRA annuity, [Defendants] must use the 20+1% rate to project a participant's cash balance account forward and convert it into an age 65 annuity." *McCutcheon II*, 62 F.4th at 695–96. We reasoned that § 1.3 of the Plan, by its own terms, required Defendants to use the 20+1% rate "for purposes of

11

converting a Member's Account into a[n] . . . annuity . . . starting at [age 65]." *Id.* at 696 (quoting the Plan, § 1.3).

*After* our decision, Defendants argued for the first time that the employee contributions that are included in the §2(b)(ii) annuity determination are subject to a different projection rate than the employer-funded PRA cash balance. As with their PRMD argument, Defendants have raised this new argument too late. This contention was squarely "ripe for review" when this Court considered Defendants' sophisticated arguments concerning the applicable projection rate the first time around, and we are not inclined to entertain it now. *Havlish*, 934 F.3d at 181–82. Accordingly, the district court did not err when it refused to give Defendants a second bite at the projection-rate apple after we had already affirmed its summary judgment decision.

*  *  *

Accordingly the district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

12