**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REBECCA M. MCCUTCHEON and PAUL CAUFIELD,<br><br>On behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    - v-<br><br>COLGATE-PALMOLIVE CO., *et al*.<br><br>       Defendants. | No. 16-cv-4170 (LGS) |

**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES, SETTLEMENT ADMINISTRATION COSTS AND A SERVICE AWARD FOR THE CLASS REPRESENTATIVE**

Class Counsel moves for attorneys' fees and expenses, settlement administration costs, and a service award for the Class Representative (Dkt. Nos. 347-350, the "Fee Petition"). The Court, having heard argument and reviewed the evidence and other submissions presented with respect to the Fee Petition and the record of proceedings in this case, makes the following findings:

1.  To the extent not otherwise defined herein, all capitalized words, terms and phrases used in this Order shall have the same meaning as used in the Settlement Agreement (as filed with the Court).

2.  Between October 29 and November 6, 2025, the Notice Administrator caused the previously approved notice of the proposed settlement and Fee Petition to be mailed via first-class mail to the last known address of each living Class Member and the potential successors of all deceased Class Members, as evidenced by the Notice Administrator's December 29, 2025,

proof of mailing (Dkt. No. 355).  Follow-up efforts were made to send the Mailed Notice to individuals whose original notice was returned as undeliverable, as the Notice Administrator has attested (Dkt. No. 358).

3. On or about December 4, 2025, Class Counsel caused their Fee Petition to be posted on the website dedicated to the proposed settlement, www.ColgatePensionClassAction.com.

4. The Court finds that the Mailed Notice, supplemented by the posting on the Class website of Class Counsel's Fee Petition, gave Class Members notice "in a reasonable manner" of the Fee Petition and properly informed them of their right to comment or object in accordance with Federal Rule of Civil Procedure 23(h).

5. In response to the Mailed Notice and the posting on the Class website of the Fee Petition, no Class Member submitted a timely objection to the fee request.

6. On January 12, 2026, a final approval hearing regarding the proposed class action settlement in this case was held.  By Order dated January 14, 2026, the Court granted final approval of the settlement.

7. The Fee Petition seeks an award in attorneys' fees of $96.28 million, which is 29% of the $332 million common fund; $2.9 million in litigation expenses; $150,000 in Settlement Administration Costs and $10,000 as a service award for Plaintiff McCutcheon.

## I.    ATTORNEYS' FEES

8. Pursuant to Federal Rule of Civil Procedure 23(h), the Fee Petition is granted. Attorneys' fees of $96.28 million are awarded as an amount that is fair and reasonable based on the factors set forth in *Goldberger v. Integrated Res., Inc*.: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the

quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."[1] 209 F.3d 43, 50 (2d Cir. 2000).

9.    Using the approach from *In re Colgate-Palmolive Co. ERISA Litig.*, the first step is to establish a baseline or benchmark fee amount on which to apply the *Goldberger* factors. 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). Here, the fees awarded in ERISA cases of comparable size, complexity, magnitude and duration support a 29% reasonable baseline fee. The proper basis for comparison in this case is other ERISA cases that generated very large common funds (in the $200-$350 million range) and that were litigated to judgment and defended on appeal or were otherwise of comparable magnitude, duration, and complexity.

10.    Class Counsel represents that there have been eight ERISA cases successfully litigated to judgment, yielding common funds in the approximately $200-$350 million range. Those eight cases yield a median fee percentage of 28.6% and a mean of 28.87%. The eight cases include *Osberg v. Foot Locker, Inc.*, No. 07 Civ. 1358 (S.D.N.Y. June 8, 2018), Dkt. No. 423 (awarding 33% attorneys' fees from a $290 million common fund) and *Laurent v. PricewaterhouseCoopers LLP*, No. 06 Civ. 2280 (S.D.N.Y. Jan. 27, 2023), Dkt. No. 310 (awarding one-third attorneys' fees from a $267 million common fund), both ERISA pension class actions litigated to judgment and defended on appeal.

11.    Additional empirical data confirms that the baseline reasonable fee should be set at 29%. First, in a review of thirty-seven ERISA cases of any size in 2006 and 2007, Professor Brian T. Fitzpatrick found that the median fee percentage was 28%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

811, 835 tbl. 8 (2010); *see also id.* at 818 tbl. 1 (explaining that employee benefits cases are ERISA cases); *In re Colgate*, 36 F. Supp. 3d at 350-51 (citing the same statistics from Fitzpatrick and noting that "Fitzpatrick's [28%] results are consistent with almost 100 ERISA settlements between 1997 and 2013 reported by Class Counsel here at the Court's request . . . ."). Professor Fitzpatrick also found that the mean and median fee awards were 17.8% and 19.5%, respectively, for settlements totaling between $250 million and $500 million in cases of any kind. *See* Fitzpatrick, *supra*, at 839 tbl. 11.

12. Another study found that the median and mean fee percentages awarded in twenty-two ERISA cases of any size between 2009-2013 were both 26%. Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 tbl. 4 (2017) ("Eisenberg, Miller & Germano 2017"). This was slightly higher than the 25% median and 23% mean fees that Eisenberg and Miller found in a review of forty-three ERISA cases between 1993 and 2008. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 262 tbl. 5 (2010) ("Eisenberg & Miller 2010"); *see also In re Colgate*, 36 F. Supp. 3d at 350 (citing Eisenberg & Miller 2010, *supra*, at 262 tbl. 5, for the 25% median fee in ERISA cases during the 1993-2008 period). For "high risk" ERISA cases, Eisenberg, Miller & Germano found a mean fee percentage of 27.21%, while for "low/medium risk" ERISA cases, they found a mean fee percentage of 24.52%. Eisenberg, Miller & Germano 2017, *supra*, at 959 tbl. 7. Cases were coded as high risk "[i]f the court affirmatively indicated the existence of substantial risk, or if exceptional risk was evident from the facts or procedural history of the case . . . ." Eisenberg & Miller 2010, *supra*, at 252.

13. Based on this empirical data, a 29% baseline percentage fee is justified.

### A.     The Time and Labor Expended by Class Counsel

14.     Class Counsel litigated this case for more than a decade and did not settle until after the case was litigated to judgment.  Class Counsel defended the judgment twice on appeal before the Second Circuit, and Class Counsel opposed Defendants' petition for certiorari in the Supreme Court.  The litigation required a significant amount of work and investment of Class Counsel's time and money.  In total, Class Counsel spent more than 27,000 attorney and other professional support hours on this matter.

### B.     The Magnitude and Complexities of the Litigation

15.     Pursuing the claims was challenging; Class Counsel was unaided by government investigations, and the Internal Revenue Service gave Colgate a favorable determination letter for the design and operation of the Plan.  Colgate interposed a substantial number of defenses. The magnitude (litigated to judgment and defended on appeal), duration (more than a decade) and complexity (ERISA) of the case support a 29% baseline fee, but not an upward adjustment as these factors are already accounted for in the 29% baseline.  *Cf. Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2019 WL 13525007, at *2 (S.D.N.Y. Mar. 7, 2019) (noting that ERISA cases "concern a highly specialized area of law"); *see also Verardo v. Progressive Cas. Ins. Co.*, No. 22 Civ. 1714, 2025 WL 1558336, at *2 (S.D.N.Y. June 2, 2025) (granting an upward variance from a benchmark of 25% to a 28% fee percentage, because, among other reasons, "Class Counsel expended significant time and labor in pursuing a novel liability theory in a complex case . . . and Class Counsel secured a significant settlement recovery of 69% of the total potential compensatory damages payable to class members pro rata without any claims process.").

**C.      The Requested Fee in Relation to the Settlement**

16.      Sophisticated corporate plaintiffs in class actions and other high-stakes litigation often agree *ex ante* to pay counsel substantial contingency fees in arm's length negotiations. "Data from sophisticated clients shows both that they choose to pay fixed one-third percentages or even higher escalating percentages based on litigation maturity . . . , and they do so even in the most enormous cases."  Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151, 1170 (2021).  Although such data was not available to the *Goldberger* panel in 2000, *see* 209 F.3d at 52, such data is relevant to evaluating what constitutes a reasonable baseline fee.  "When awarding attorneys' fees, the 'ideal proxy' for the award should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for legal services would agree." *In re Colgate*, 36 F. Supp. 3d at 352.

17.      The baseline fee may be increased or decreased based on a consideration of three additional *Goldberger* factors -- the risk of the litigation, the quality of representation and any remaining policy considerations. *See id.* at 351.  Each of these factors supports the reasonableness of the requested 29% fee.

**D.      The Risk of Litigation**

18.      The "foremost factor" in the required "searching assessment" of a case's characteristics is the contingency risk measured as of when the case was filed, *Goldberger*, 209 F.3d at 52-55, with "greater risks undertaken by counsel . . . support[ing] a higher [fee]," *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020).

19.      Here, the risk faced by Class Counsel when this case was filed was high.  Each of the three other ERISA law firms that had co-counseled the predecessor *Colgate I* lawsuit

6

declined Class Counsel's invitation to share in the risk and expense of this case by continuing as co-counsel. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (stating that when the plaintiffs' class action bar steers clear of a potentially lucrative case, it means they "saw th[e] litigation as too risky for their practices"). Given the other firms' participation in *Colgate I*, these firms were willing to work on ERISA class-action litigation and contingency cases as in general, but they regarded this case as too risky.

20.    This action involved both the usual complexities and structural risks typical in ERISA litigation, and it involved a novel area of law and presented an array of defenses that limited the probability of success. The risk that Class Counsel faced in litigating this case supports the requested fee.

### E.    The Quality of Representation

21.    Quality of representation is "best measured by results." *Goldberger*, 209 F.3d at 55. The settlement reached represents nearly 98% of the total residual annuities that the Class claimed they are owed, calculated as the Class alleged they should be calculated, brought forward with interest. A recovery of nearly all the damages allegedly owed to the Class reflects high-quality representation, supporting the baseline fee. *Cf. Verardo*, 2025 WL 1558336, at *2 (concluding that an increase from a 25% benchmark to a 28% fee was appropriate because, among other reasons, counsel secured a settlement recovery of "69% of the total potential compensatory damages payable to class members pro rata without any claims process.").

### F.    Public Policy Considerations

22.    While "[c]ourts must scrutinize the unique circumstances of each case with a jealous regard to the rights of those who are interested in the fund," they also must avoid "setting fees too low" and "creat[ing] poor incentives" for counsel bringing such cases in the future. *In*

*re Colgate*, 36 F. Supp. 3d at 352-53.  This case, which involved substantial difficulty and risk, merits demonstrating to other class counsel that they will be compensated for the labor and cost of pursuing such a case and achieving success for the class.  *Cf. In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 Civ. 5575, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 25, 2006) ("[T]he Court's major focus in fashioning a fee award is encouraging the bar to undertake future risks for the public good in tomorrow's cases.").  Public policy supports the 29% baseline.

### G.    Lodestar Cross-Check

23.    "The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."  *In re Colgate*, 36 F. Supp. 3d at 353.  "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  In this case, Class Counsel spent more than 27,000 hours litigating this case (excluding time related to the Fee Petition).  This is a reasonable amount of time given the stakes, the length of the litigation, the complexity of the claims and defenses, the level of resistance from Defendants, the burden of proof that Plaintiffs bore and the $332 million settlement achieved.

24.    The hourly billing rates used to calculate the lodestar are reasonable.  They range from $900 to $1,150 per hour for partners, $700 to $800 per hour for senior associates and $250 per hour for senior paralegals.  Adjusted for inflation, these are in line with rates approved in the *Laurent* matter in January 2023 and the *Osberg* matter in 2018.  *See* Dkt. No. 349 ¶ 3; *see also* Final Order & Judgment, *Laurent*, No. 06 Civ. 2280, Dkt. No. 310 (approving attorneys' fee equal to one-third of the common fund with rates of $1,060 per hour for partners and rates ranging from $650 to $900 per hour for senior associates per Dkt. No. 303); *see also* Order Awarding Attorneys' Fees & Expenses & Service Awards for Plaintiff & Testifying Class

Members, *Osberg*, No. 07 Civ. 1358, Dkt. No. 423 (holding a requested attorneys' fee equal to 33% of the common fund to be fair and reasonable). These rates are generally below current market rates for lawyers of similar quality litigating matters of similar magnitude in the New York legal market, and generally below rates that have previously been approved as reasonable.[2] *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018) (accepting, via lodestar cross-check, up to $1,375 per hour for partners and up to $700 per hour for associates per Dkt. No. 939 and exhibits); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (accepting $1,048 per hour for partners and up to $753 per hour for associates reasonable in a commercial case and citing with approval a case accepting $270 per hour for legal assistants).[3]

25.     This results in an overall lodestar of approximately $19.5 million and an effective lodestar multiplier of 4.92. This multiplier is reasonable given the level of risk involved, and it is less than the 5.2 multiplier approved in *In re Colgate* -- a case that Class Counsel represents was less risky than this one.

---

[2] Courts use current rates to calculate the lodestar figure to account for the delayed payment and inflation. *See, e.g.*, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

[3] *See also StoneX Grp., Inc. v. Shipman*, No. 23 Civ. 613, 2025 WL 1212165, at *3-4 (S.D.N.Y. Apr. 25, 2025) (finding a partner rate of $1,285 per hour and senior associate rates of $784.90 and $800 per hour reasonable); *Adstra, LLC v. Kinesso, LLC*, No. 24 Civ. 2639, 2025 WL 1070034, at *7 (S.D.N.Y. Apr. 9, 2025) (finding a partner rate of $1,421 per hour and associate rates of up to $883 per hour reasonable in a commercial case); *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 588-90 (S.D.N.Y. 2025) (awarding fees at rates ranging from $845 for a junior associate to $2,035 for a partner with more than 30 years' experience); *An v. Despins*, No. 22 Civ. 10062, 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (finding rates of $1,760 per hour for partner, $1,308 and $1,440 per hour for counsel and $796 and $895 per hour for associates reasonable in a commercial case).

## II.    EXPENSE AND SETTLEMENT ADMINISTRATIVE COST REIMBURSEMENT

26.    The Court finds that the litigation expense reimbursement request of $2.9 million is reasonable given the complexity and stakes involved in this case and is adequately documented.  It is hereby approved.

27.    The Court finds reasonable and adequately documented the reimbursement sought for $150,000 in Settlement Administration Costs to pay the Notice Administrator and the Enrolled Actuary for implementing the notice plan and calculating the estimated and final benefits.  It is hereby approved.

## III.    SERVICE AWARD

28.    The Court approves the requested $10,000 service award for Ms. McCutcheon and finds that the requested amount is reasonable and will promote equity between Ms. McCutcheon and the absent Class Members she served.

29.    "[T]o determine whether a requested service award is reasonable and promotes equity, courts consider factors such as the class representative's contributions to the litigation; any special circumstances, such as personal or professional risks to the class representative; and the size of the service award relative to individual class members' recovery." *See Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740, 2024 WL 1054983, at *1 (S.D.N.Y. Mar. 4, 2024).

30.    Here, though Ms. McCutcheon does not claim any special circumstances or out-of-pocket expenses not already reimbursed by Class Counsel, Ms. McCutcheon contributed to the litigation (and the claim and appeal process that preceded it) by spending many hours assisting in Class Counsel's investigation of the case and answering Class Counsel's questions concerning her 1994 distribution and distribution paperwork.  She also reviewed and commented on pleadings and motions, responded to Defendants' interrogatories and identified and collected

10

materials in response to document requests.  Ms. McCutcheon authenticated documents, prepared for and participated in a day-long deposition (which required her to travel from Indiana to New York), discussed litigation strategy and made herself available for regularly communicating with Class Counsel regarding the case.  Ms. McCutcheon actively participated in settlement negotiations.  The size of the requested $10,000 award is modest compared to the average nearly $200,000 net recovery per individual Class Member, and the overall results her service helped achieved.  Accordingly, the $10,000 service award to Ms. McCutcheon is reasonable and promotes equity.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that attorneys' fees in the amount of $96.28 million are awarded to Class Counsel.  Defendants are ordered to pay this amount from the Total Settlement Amount within ten days of the date hereof and to do so in two separate wires: (1) 50% to Gottesdiener Law Firm, PLLC pursuant to wire transfer instructions from Class Counsel and in accordance with Agreement § 11.A; and (2) 50% to the Escrow Account established by Citibank, N.A. referenced in the fully completed, execution version Escrow Agreement dated November 24, 2025, attached to Dkt. No. 347-1 (hereby incorporated by reference into this Order), which Escrow Amount shall not be disbursed until the Agreement § 14A Payment Date (and the Parties have filed the Payment Spreadsheet with the Court in accordance with Agreement § 12C).

It is further **ORDERED** that Class Counsel shall be reimbursed for expenses in the amount of $2.9 million, which the Court finds reasonably were expended litigating and resolving the lawsuit, and for Settlement Administration Costs of $150,000.  These amounts shall be paid from the Total Settlement Amount within ten days of the date hereof.

It is further **ORDERED** that a service award of $10,000 is granted to Plaintiff McCutcheon which amount shall be paid from the Total Settlement Amount no later than the Agreement § 14A Payment Date.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 347.

Dated: February 17, 2026
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

12